The People's Fire Insurance Company

*v.*

Emilie Pulver, for use, etc.

*Filed at Ottawa January 25, 1889.*

1. Insurance — *proof of loss — whether sufficiently specific — waiver.* Where, owing to the destruction of books, bill of sale, invoices and other papers, the assured is unable to furnish a specific statement or inventory of the property destroyed, the law will hold the terms of the policy requiring proofs of loss as sufficiently complied with, by furnishing such as it is within the power of the assured to make. The law does not require the assured to do an impossible thing.

2. In·this case, proofs of loss by fire were made February 17, 1885, seven days after the fire, stating therein the actual cash value of the property destroyed, and giving a full and accurate description of each kind of property, and the value thereof. No objection was made to this proof of loss until March 30, 1885. The assured replied on April 4, stating that a more complete and definite inventory could not be made, for the reason that all the books, invoices, etc., were destroyed in the fire, which letter was not answered until April 14, when the assured. was again informed that the proofs were insufficient, for the reasons stated in the letter of March 30 : *Held,* that if there were defects in the proofs of loss they were waived by the company, and that the delay in pointing out objections alone was a waiver.

3. Practice — *directing what the verdict shall be.* Where there is evidence given on the trial of an action on a policy of fire insurance, tending to show a compliance with the requirement of the policy as to proofs of loss, or a waiver of defects in such proofs, there will be no

error in the court refusing to instruct the jury to find for the defendant for want of sufficient proofs of the loss being furnished.

4. ERROR WILL NOT ALWAYS REVERSE—*inaccurate instructions.* Although instructions given in behalf of the plaintiff state the defense broader than the issues and evidence, it will not work a reversal of a judgment for the plaintiff, unless this court can see that injury to the defendant has resulted from the error.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN P. ALTGELD, Judge, presiding.

Messrs. MOSES & NEWMAN, for the appellant.

Messrs. KRAUS, MAYER & STEIN, for the appellee.

Per CURIAM: This was an action of assumpsit on one of the three fire insurance policies mentioned in the case of *Birmingham Fire Ins. Co.* v. *Pulver, for use, etc.,* in which an opinion has heretofore been filed. (126 Ill. 329.) The judgment in the Superior Court was for appellee, for $1112.13, from which an appeal was prosecuted to the Appellate Court, where it and the *Birmingham case* were, by agreement, submitted together, and both judgments affirmed. Both cases were again appealed to this court, but submitted separately.

It is first insisted, that the judgment in this case is erroneous, because the evidence fails to show that preliminary proofs of loss were made by the assured, as required by the terms of the policy, and that the trial court erred in refusing to instruct the jury to find for defendant for want of such proofs. It is not claimed that there is an entire want of such evidence, but the contention is, that the proof of loss furnished, and which was admitted in evidence, is not a compliance with the condition in the policy as to such proofs, in that the assured "failed to furnish an inventory of the goods claimed to be totally destroyed, showing the quantity, quality and cost of each article claimed to be destroyed." The proofs of loss

in question were made February 17, 1885,—seven days after the fire. In it the actual cash value of the property destroyed is stated to be $3929.45, as shown by an annexed schedule, marked "Exhibit B," "giving a full and accurate description of each kind of property, and the value of the same, with the damage or loss on each, separately." "Exhibit B" is a list of many articles, giving numbers and value, in the following form:

"8 imported dolmans, $17.50, - - - - $140.00
10 Russian circulars, $8.00, - - - - 80.00
1 lot handkerchiefs, - - - - - - - 5.00"

—The whole footing up $3929.45. Then follows a list of a few small articles, under the heading, "Present worth of damaged stock."

Conceding that the inventory furnished was not a strict compliance with the requirements of the policy, it was an attempt to do so in apparent good faith, and we think, under the proof made as to the ability of the assured to furnish a more accurate one, should be held sufficient. The evidence shows that the preliminary proof of loss was delivered to the company about the date of its execution. No objection was made to it until March 30. Of the three objections then made, two are abandoned. The assured was also notified in this letter to procure her books, inventory, and other vouchers and exhibits, for examination, and that then the company would require her to submit to an examination under oath, etc. To the objection now urged, the assured replied, on April 4th: "I beg leave to enclose a certified copy of the bill of sale to me of the insured property, the original having been destroyed in the fire. The inventory was also destroyed, and I have already furnished you with a copy of it, attached to and a part of the proofs of loss. As you are aware, the fire occurred within a week after I opened the business, and I had no books of account at all, except a sales book, also destroyed, and no bills or invoices except the above bill of sale." This letter

was not answered until the 14th of the same month, when she was again informed that the proofs were insufficient, for the reasons stated in the letter of March 30, and that the certified copy of the bill of sale in no way met the request of the company.  In the same letter, however, she is again notified to appear for further examination.

If, from the destruction of books, bill of sale, invoices, and other papers, the assured was unable to furnish a more specific statement than that which she did furnish, the law would hold the terms of the policy sufficiently complied with.  It would not require her to do an impossible thing.  (Wood on Fire Insurance, 709.)   That there is evidence in this record tending to show that she availed herself of all the means within her control to comply with the terms of the policy and the demands of the company, can not be denied.   Nor can it be seriously contended that the conduct of the company did not amount to a waiver of defects in the proofs of loss.   The delay in pointing out objections alone, must be so held, under the authority of *Great Western Insurance Co.* v. *Staaden*, 26 Ill. 365. At least it will be conceded that there is evidence in the record tending to prove such waiver.   The court below therefore properly refused to take the case from the jury, both because the evidence tended to show compliance with the requirements of the policy in furnishing proofs of loss, and because it tended to prove a waiver of any defects therein.

In this case appellant asked twenty instructions, many of them quite lengthy, and nearly all literal copies of those asked in the *Birmingham case*.   As in that case, all were refused, and a series prepared and given by the judge.   It is contended that it was error to refuse the instructions asked, and that those given by the court did not present the law of the case fairly to the jury.

By the fifteenth instruction asked by appellant, its defense was stated in two propositions : First, that the plaintiff was not the actual owner of the destroyed property at the time of

the insurance and fire; second, that the plaintiff committed fraud upon the company by making a fraudulent proof of loss, in overstating the amount and value of the property destroyed, and that she swore falsely in her examination taken under the provisions of the policy, with the intent to defraud the company. In the instructions given by the court, in addition to these defenses, it is stated that the defendant claimed that the fire was collusive, and that the assured made fraudulent statements as to the origin of the fire; and it is insisted that by stating to the jury that such claim was made by the defendant, its case was prejudiced. From the pleas remaining in the record, (especially the tenth,) and the scope of the evidence, we may well suppose such defences were insisted upon in the argument before the jury,—at least we have no means of determining that they were not. Even if the instructions given did state the defense broader than the issues and evidence made it, it would not work a reversal of the judgment, unless we could see that injury to appellant had resulted,—of which there is no evidence before us.

The instructions given, on the issues and evidence, presented the law of the case with reasonable accuracy, and, therefore, whether all the points sought to be covered by appellant's instructions were met or not, is immaterial. Having examined the refused instructions with care, and compared them with those given, we are clearly of opinion that there was no error in giving and refusing instructions.

The other grounds of reversal insisted upon, of sufficient importance to be noticed, are disposed of in the *Birmingham case*, referred to, and need not be further noticed in this.

*Judgment affirmed.*