WICKING v. CITIZENS' MUTUAL FIRE INSURANCE CO.

1. FIRE INSURANCE—AMOUNT OF LOSS—ARBITRATION.

Plaintiff in an action on an insurance policy cannot claim that an arbitration, in which defendant joined with other companies to determine his loss, was, because of the participation of such companies, not an arbitration under the policy in suit, but a common-law arbitration, where the policy of each of the companies was in the standard form, differing from the others only in the name of the company, and the arbitration was such as is provided for therein. *Connecticut Fire Ins. Co.* v. *Hamilton*, 8 C. C. A. 114, 59 Fed. 258, distinguished.

2. SAME—PROOFS OF LOSS—CAPTIOUS OBJECTIONS.

That proofs of loss forwarded to and received by the insurer contained no formal address to the company, and failed to state accurately the addresses of other insurers, are objections without force.

3. SAME—LOCATION OF FIRE—SPECIFICATION.

Where the insurer's agents knew the location of a fire, it is immaterial that the proofs of loss failed to state it with exactness.

4. SAME—INTEREST OF INSURED—ACCURACY OF STATEMENT.

The fact that the statement of ownership in proofs of loss was made in the present tense, while the proofs were dated some days later than the fire, does not repel the inference that the statement was understood by the parties to refer to the time of the loss.

5. SAME—WAIVER.

Defects in proofs of loss, and insured's refusal to submit to an examination under oath as provided by the policy, are waived by negotiations for settlement being renewed, and insured's going to a place by appointment with and request of the insurer, at an expenditure of time and money, and making a statement of his business, and offering to be questioned under oath.

Error to Shiawassee; Smith, J. Submitted October 19, 1898. Decided December 6, 1898.

*Assumpsit* by Frank E. Wicking and Frederick J. Storrer, copartners as Wicking & Storrer, against the Citizens' Mutual Fire Insurance Company, of Jackson, on a policy of insurance. From a judgment for plaintiffs, defendant brings error. Affirmed.

This is an action to recover for a loss by fire under a policy of insurance issued November 17, 1895, the fire occurring about midday January 1, 1896. The policy was for $1,000. The goods were insured in eight other companies, for $8,500. The defendant and the other companies were promptly notified of the fire. The secretary and adjuster of the defendant, and also the adjusters of other companies, visited the store. Some of the goods were completely destroyed, and the rest damaged by smoke and water. Under the instruction of the adjusters, plaintiffs moved the goods into another building, arranged them according to the damage done, and made an inventory. Plaintiffs and the adjusters could not agree upon the amount of damage. Thereupon, according to the terms of the policies, plaintiffs and the insurance companies, including defendant, made an agreement, January 9th, for submission to appraisers. This agreement submitted only the amount of loss and damage, and provided that the appraisement should be—

"*Prima facie* evidence as to the amount of such loss and damage; it being understood that this appointment is without reference to any other questions or matters of difference within the terms and conditions of the insurance, and is of binding effect only so far as regards the actual cash value of, and the loss and damage to, said property."

The arbitrators made an award fixing the sound value to be $14,127.96, and the damage to be $7,552.69. The date of the award was January 24th. On the same day, plaintiffs, learning that the arbitrators were about to conclude the inventory without considering the goods totally destroyed, sent a written communication to them, request-

ing them to appraise such goods, and offering to submit to them all their books, papers, and inventory made previous to the fire, and all other evidence which they had or could produce. One of the arbitrators indorsed upon the inventory that it did not cover any goods which were entirely destroyed. The adjuster for the defendant and one other adjuster were present while the arbitrators were at work. The companies were satisfied with the award. Plaintiffs were not. The latter part of January, plaintiffs caused another inventory to be taken by three parties. On January 30th, plaintiffs wrote the defendant that they intended to open their store, and commence selling goods, February 5th, which they did. To this letter defendant made no reply until March 7th. The reason given for proceeding to sell is that the goods were deteriorating.

On February 11th, plaintiffs sent by express, to the defendant and each of the other companies, proofs of loss, which were received by the defendant February 14th. On March 7th it made the following reply:

"On the 14th day of February, ult., the Citizens' Mutual Fire Insurance Company, of Jackson, Michigan, received at its head office in that city a package of papers, without any letter or other communication explaining them, consisting of 92 pages of mimeograph, written, and typewritten work. The first page is headed 'Inventory of Wicking & Storrer Stock of Goods.' This part of the work comprises 84 pages. The footings of the 84th page read as follows: 'Cash value of goods which were on hand at time of fire, $15,939.66. Amount of loss thereon, $10,-909.95.' The subsequent six pages are typewritten, and purport to be a statement under oath, signed and sworn to by Frank E. Wicking and Frederick J. Storrer, setting forth the following circumstances, viz.: That a fire occurred on the 1st day of January, 1896, which destroyed and damaged 'the aforementioned goods as above set forth;' that the cause of the fire was from a stovepipe; that deponents are sole owners of said stock of goods, and no one else has any interest in the same; that the cash value is 'as above stated,' and the loss is as above stated; that there was no incumbrance on said goods; that there was

other insurance to the amount of $8,500 (list of companies follows); that copies of all the descriptions and schedules of policies in the following named companies purport to be given, viz. :   The Granite State Fire Insurance Co., the British America Assurance Co., the Hartford Fire Insurance Co., the Girard Fire & Marine Insurance Co., the Western Assurance Co., the Delaware Insurance Co., the Northern Assurance Co., and the United States Fire Insurance Co. ; that the building in which said goods were situated at the time of the fire was occupied as therein stated. The following and last pages purport to be a true copy, sworn to by Frank E. Wicking and Frederick J. Storrer, of a certain 'Award of Appraisers,' bearing date the 24th day of January, 1896, signed by W. C. Lewis, W. W. Thomas, Samuel Lamfrom, appraisers, in which the sound value was determined to have been $14,127.96 and the loss and damage $7,552.69.

"The foregoing is a short statement of the contents of said package, which, beyond the envelope or covering in which it came, does not seem to be addressed to the said Citizens' Mutual Fire Insurance Company, nor does the name of said company appear anywhere in its text.   If said document or package is intended as proofs of loss against the Citizens' Mutual Fire Insurance Company of Jackson, under policy No. 1,021,719, and your claim against said company on account of the fire of January 1, 1896, I am instructed by the said Citizens' Mutual Fire Insurance Company to notify you that the same is incomplete, misleading, and not in accordance with the conditions of said policy, and lies in my office subject to your order.   The document or package does not show any connection between the Citizens' Mutual Fire Insurance Company and Wicking & Storrer; it does not refer to a policy of the Citizens' Mutual Fire Insurance Company; nor does it set forth the sum for which said company is liable pursuant to said policy.   (See line 3, Michigan standard conditions.)   Line 74 of the Michigan standard conditions requires a statement of any changes in the title, use, occupation, location, possession, or exposure of said property since issuing the policy.   Your document or package ignores this altogether.   The Michigan standard policy contemplates that the insurer shall have true knowledge of the title to property insured from the issuing of the policy till date of fire.   Your document or package bears date February 7, 1896, and its

language is in the present tense, of that date. It states that deponents are sole owners of said stock of goods, and no one else has any interest in the same. The conditions of the policy require a statement of title at the time of the fire, which you have not given. The wordings you have given of the other insurances must be wrong. They are certainly misleading and confusing. You have located the following companies at 116 West Exchange street, viz.: United States, Citizens' Mutual, Girard, Hartford, and British America; the Northern and Delaware at 927 west side of North Washington street; and the Granite State and Western Assurance at the south-west corner of Washington and Exchange streets. You will readily see that, even had your document or package been in all other respects complete and not confusing or misleading, the question of contribution among the various companies which you claim are interested would be one of grave doubt. There is nothing to show whether the fire was at 116 West Exchange street, or at 927 west side of North Washington street, or at the southwest corner of Washington and Exchange streets.

"The Citizens' Mutual Fire Insurance Company, upon receipt of the papers referred to, supposed they were intended to be in compliance with lines 69 to 75 of the conditions of the Michigan standard policy; that the 84 pages of inventory referred to represented the inventory called for by line 69 of said conditions; that the subsequent six pages of typewritten work represented the requirements as laid down in lines 70 to 75 of said conditions; and the two pages headed 'Award of Appraisers' represented a compliance with line 95 of said conditions; thus showing the companies that an inventory had first been prepared, as required by the said conditions, but, differences having arisen regarding the amount of loss and damage, an appraisal was held, and the final result was as stated. This company was, however, advised that the inventory in question was not the one first prepared by you immediately after the fire, and on which differences arose between you and the representatives of the companies on the ground when the agreement for submission to enter into appraisal was made, but that it is something entirely different, and of which they had no knowledge; and, instead of abiding by the award of the appraisers, you have ignored said award, and rely upon the new and strange (to the companies) inventory, consisting of 84 pages re-

ferred to. The Citizens' Mutual Fire Insurance Company wishes your attention to be drawn to the fact that, under the standard policy of the State of Michigan, the amount of loss is not ascertained in the manner which you have adopted."

On March 26th the proper notary's certificate was sent to the defendant. To this, the defendant, through its adjuster, made the following reply:

"The British America Assurance Company, of Toronto, the Citizens' Mutual Fire Insurance Company, of Jackson, Michigan, the Granite State Fire Insurance Company, of Portsmouth, N. H., the Northern Assurance Company, the United States Fire Insurance Company, of New York, and the Western Assurance Company, of Toronto, have advised me that they have received from you what purports to be certificates from a notary public—Thomas D. Dewey—living nearest to the place of fire, and not related to you, nor interested in the claim, and that he has examined the circumstances of the fire, and the loss on account of said fire to your goods, and that he believes you have sustained loss to the amount of $9,500 and over, by reason of said fire, which I presume is intended by you as compliance with one of my letters to you, dated March 7, 1896. Please let me know at your earliest convenience when you will be prepared to furnish the other information and particulars referred to by me, and required by the conditions of the policy. I would respectfully call your attention to lines 92, 93, 94, and 95 of the Michigan standard conditions, and suggest that you forthwith place the company in possession of the information which the policy calls for."

On April 17th, in reply to a letter from plaintiffs, defendant wrote them that the matter of the adjustment was largely left to Mr. Dodd, its adjuster; that it would write him at once, and apprise them of its determination after hearing from him. On June 9th, the defendant's secretary wrote plaintiffs that he would write Dodd for information. About the same time, Mr. Wilson, the secretary, in conversation with Storrer, said that "it was time something should be done; that our loss should be settled; and he also asked me if we had anything further

to submit in regard to the amount of loss. I told him 'No,' and he said the only thing he could see that the adjusters were hanging out about was that we owed Wilde Brothers considerable; that his company wanted to pay our loss; and that, as soon as he could see Mr. Dodd, he would let me know." Storrer and plaintiffs' attorney went to Detroit, by appointment, the latter part of June, to meet defendant's adjuster and two adjusters representing other companies, and to discuss the possibility of a settlement. The adjusters said they had no offer to make, and asked if plaintiffs had made up a statement of their business since the fire, to which they replied "No," and feared they would not be able to make one. Plaintiffs made offers of settlement, which were refused. The adjusters stated that if plaintiffs would get up a statement of their business since the fire, as they had asked for, they would come at once, and try to adjust their loss. Plaintiffs went home, made out a statement, and notified Mr. Dodd, who, on June 29th, went to Owosso, and interviewed the plaintiffs. On this occasion, plaintiffs submitted to Mr. Dodd all their books and papers, gave him everything he asked for, answered all his questions in regard to the business after February 5th, and offered to be put under oath if he desired. No agreement was reached, and on July 30, 1896, plaintiffs commenced suit.

The court instructed the jury that the plaintiffs' case must rest solely upon the contract of submission to, and the award of, the appraisers; that in no event could they recover more than two-nineteenths of the award; and left them to determine whether the loss sustained was less than the amount of the award. The jury rendered a verdict based on the award.

*Watson & Chapman* (*Chamberlain & Guise*, of counsel), for appellant.

*Selden S. Miner* (*John D. Conely*, of counsel), for appellees.

GRANT, C. J. (*after stating the facts*). 1. Plain-

tiffs' counsel contend that the submission to arbitration was not under the policy, but outside of it, and that it must stand on the general ground of a common-law arbitration. In support of this, they cite *Connecticut Fire Ins. Co.* v. *Hamilton,* 8 C. C. A. 114, 59 Fed. 258, which is cited with approval in *Hamilton* v. *Phœnix Ins. Co.,* 9 C. C. A. 536, 61 Fed. 385, and *Harrison* v. *German-American Fire Ins. Co.,* 67 Fed. 585. The appraisal demanded in that case was not such as the policy called for. All the companies in that case made a joint demand, but the terms of the policies were different, and each of necessity, therefore, mixed its controversy with the others. On page 118, 8 C. C. A., and page 262, 59 Fed., Judge Severens states wherein these policies differed, and shows that each had a separate and distinct controversy from the others. In this case the policies are all alike, except in the names of the companies, and are those prescribed by the laws of this State. All the companies could therefore join in this arbitration to determine the value of the loss without mixing separate controversies. In other words, the appraisal was just such as each policy provided, and was binding upon plaintiffs and each company only so far as the policy and the submission under it provided. Neither was bound by the appraisal. It was only *prima facie* correct, and either party attacking it assumed the *onus probandi.* If, therefore, the circuit court relied upon the submission as a waiver of all the other provisions of the policy, he was in error. The policy expressly provides that "this company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal," etc. It was therefore incumbent on plaintiffs to make proofs of loss, notwithstanding the submission for an appraisal.

2. It is urged that plaintiffs failed to show that they had furnished proofs of loss. By this is meant valid proofs of loss. Proofs were furnished in good faith, and under the belief that they complied with the contract of insurance.

A copy was produced by plaintiffs upon the trial, and they were examined in regard to it. An extract from it was read in evidence, which showed the goods totally destroyed, and their value, $659.29. It also showed the cash value of the goods on hand at the time of the fire to be $15,-939.66, and amount of loss thereon to be $10,909.95. These proofs, called "Exhibit I" in the record, were offered in evidence. They were objected to as "incompetent, irrelevant, and immaterial." After some discussion, the attorney for plaintiffs stated that he withdrew them for the present. It does not appear that they were afterwards offered in evidence, and they do not appear in the record. The objections made to them in the letter of March 7th by Mr. Dodd are technical. We fail to find in this letter any statement of a material defect. Some of the objections are frivolous. Mr. Dodd and his principal fully understood that plaintiffs sent these as their proofs of loss. It was unnecessary to write a formal address to the defendant, or to state accurately the addresses of the other companies. The frivolity of some of the objections appears in his statement:

"There is nothing to show whether the fire was at 116 West Exchange street, or at 927 west side of North Washington street, or at the southwest corner of Washington and Exchange streets."

Defendant's agents knew the location, and to permit any such objection to defeat a valid claim would be a reproach to the law. The provision of the policy in regard to these proofs is as follows:

"If fire occur, the insured shall give immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, make a complete inventory of the same, stating the quantity and cost of each article and the amount claimed thereon, and within 60 days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowl-

edge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof, and the amount of loss thereon; all incumbrances thereon; all other insurance, whether valid or not, covering any of said property, and a copy of all the descriptions and schedules in all policies; any changes in the title, use, occupation, location, possession, or exposures of said property since the issuing of this policy; by whom and for what purpose any building herein described, and the several parts thereof, were occupied at the time of the fire; and shall furnish, if required, verified plans and specifications of any building, fixtures, or machinery destroyed or damaged; and shall also, if required, furnish a certificate of the magistrate or notary public (not interested in the claim as a creditor or otherwise, nor related to the insured) living nearest the place of fire, stating that he has examined the circumstances, and believes the insured has honestly sustained loss to the amount that such magistrate or notary public shall certify."

The only objections entitled to any consideration are:

(1) That the policy requires a statement in the proofs of loss of "any changes in the title, use, occupation, location, possession, or exposures of the property since issuing the policy." It is manifest from this record that the title, use, location, and situation of the property were the same at the time of the fire that they were at the issuance of the policy, 44 days before; and it is a fair inference from the letter of March 7th that this was stated in the proofs of loss.

(2) That the proofs failed to show that the plaintiffs were the sole owners of the stock at the time of the fire. This is based upon the technical objection that the proofs were dated February 7th, and that the language is in the present tense. The fair inference is that both plaintiffs and defendant understood this to refer to the time of the fire.

We think there is enough upon this record to show that correct proofs of loss were furnished.

3. The policy provides for an examination of the insured under oath. Such an examination was demanded,

and had February 25th to 27th.   Upon that examination,. plaintiffs, under the advice of their attorney, Mr. Miner, refused to produce their books showing the amount of sales since February 5th, and, under the like advice, refused to answer any questions concerning their business or sales since that. date.   They had bought other goods, mingled them with their old stock, and sold them.   This conduct was in plain violation of the contract, and, if the result depended upon this, it would become a serious question whether it would not defeat recovery.   This conduct, however, was clearly waived by subsequent proceedings. Negotiations were subsequently renewed.   Plaintiffs, by appointment, went to Detroit, and, at the request of defendant, made a statement of their business, submitted it to the defendant, and offered to be questioned under oath. These things involved an expenditure of time and money, and, under our decisions, operated as a waiver of this and other defenses which are claimed.   *Burnham* v. *Interstate Casualty Co.*, 117 Mich. 155, and authorities there cited.   For the same reason, if there were any defects in the proofs of loss, they were waived.   The court may have given a wrong reason, but its conclusion was correct. The result will not, therefore, be disturbed.

Other objections are raised, but, as they come within the above determination, we refrain from discussing them.

Judgment affirmed.

The other Justices concurred.