[No. 1467, May 15, 1912.]

## J. T. DEARBORN, Appellee, v. THE NIAGARA FIRE INSURANCE CO., of the City of New York, Appellant.

### SYLLABUS (BY THE COURT).

1. A bill of exceptions, under the provisions of sec. 26, chap 57, C. L. 1907, may be settled and signed by the judge who tried the cause or his successor.

2. Evidence examined and held to justify the action of the court in directing a verdict for the plaintiff, where motion for a directed verdict was made by both parties at the close of the testimony.

3. If the contracting parties to a policy of fire insurance make a mistake in the name of the insured, a court of equity, upon proper proof, has jurisdiction to reform the contract and correct the mistake.

4. If a party applying for insurance states the facts to the agent and relies upon the agent to write a policy of insurance that will protect his interests, and the agent so understands, but fails by inadvertence or mistake to so write the contract, the mistake is mutual.

Appeal from District Court, Curry County.

E. W. DOBSON, for Appellee.

The writing must be taken to contain the real contract until the contrary is established by the clearest and most satisfactory evidence, and a mere preponderance of evidence will not suffice. Lake v. Meacham, 13 Wis. 355, 382; McClellan v. Sanford, 26 Wis. 595, 607; Blake Opera House Co. v. Home Ins. Co., 73 Wis. 667, 41 N. W. 968; Hearne v. Insurance Co., 20 Wall. 490; Southard v. Curley, 134 N. Y. 154, 31 N. E. 330; Groff v. Rohrer, 35 Md. 327; Tripp v. Hasceig, 20 Mich. 263.

Westchester Fire Ins. Co. v. Wagner, 38 S. W. 214;

Schmid v. Virginia F. & M. Ins. Co. 37 S. W. 1013; Ins. Co. v. Holcomb, 34 S. W. 915; Cary Mfg. Co. v. Merchants Ins. Co., 59 N. Y. S. 7.

A contract of insurance is special in itself and binds only the parties to it. Lynch v. Danzell, 4 Bro. Parl. Rep. 432; The Saddler's Co. v. Babcock, 2 Atk. 554; Northern Assurance Co. v. Grand View Bldg. Assn., 183 U. S. 308; 16 L. R. A. (N. S.) 1173; 101 Fed. 77; Woodbury Sav. Bank v. Charter Oak Ins. Co., 29 Conn. 374; Barnett v. Union Mutual F. Ins. Co., 7 Cush. 175; Finney v. Bedford Comrcl. Ins. Co., 41 Am. Dec. 515; Finney v. Fairhaven Ins. Co., 5 Met. 192; Pearson v. Lord, 6 Mass. 84; Stackpole v. Arnold, 11 Mass. 31; Graves v. Boston Marine Ins. Co., 2 Cranch. 419; Murray v. Columbia Ins. Co., 11 Johns. 302; Turner v. Burrows, 5 Wend. 541; Finney v. Warren Ins. Co., 1 Metc. 18; Fuller v. Phoenix Ins. Co., 16 N. W. 273.

HARRY L. PATTON. M. C. SPICER, for Appellee.

On motion to strike. Chap. 57, sec. 26, laws of 1907; Ross v. Berry, 120 Pac. 309; Rule of the Court 14.

On the merits. Error in directing verdict. Home Savings Bank v. Woodruff, 94 Pac. 957; Beuttell v. Magone. 157 U. S. 154; Empire State Cattle Co. v. A. T. & S. F. Ry. Co., 147 Fed. 457.

This rule has also been applied in the following cases: Western Express Co. v. United States, 141 Fed. 28; Phoenix Insurance Co. v. Kerr, 129 Fed. 723; United States v. Bishop, 125 Fed. 181; Insurance Co. v. Wisconsin Central Railway Co., 134 Fed. 794; McCormick v. National City Bank, 142 Fed. 132; West v. Roberts, 135 Fed. 350; Bradley Timber Co. v. White, 121 Fed. 779; Magone v. Origot. 70 Fed. 778; Merwin v. Marone, 70 Fed. 776; Chrystie v. Foster, 61 Fed. 551.

It is a fundamental proposition of law that where there is a mutual mistake in the making of a contract equity will reform it. German American Insurance Co. v. Geuck (Ill.) 6 L. R. A. 835; Sneyy v. Atlantic F. & M. Insurance Co., 98 U. S. 85; Thompson v. Phoenix Ins. Co., 136 U.

S. 287; 34 L. Ed. 409; Phoenix Ins. Co. v. State et al, 88 S. W. 917 (Ark.); Phoenix Ins. Co. v. Hilliard, 52 So. 799 (Fla.); German American Ins. Co. v. Darrin, 103 Pac. 87 (Kans.); 19 Cyc. 651 and cases cited.

In the case of the German American Ins. Co. v. Darrin, the court says:

"The applicant for insurance has a right to rely upon the assumption that his policy will be in accordance with his oral application, and, if the insurer desires to make the policy in anything different, it must, in order to make it binding upon assured, call his attention to the clauses differing from the application. (Citing Gristock v. Insurance Co., 49 N. W. 634.)"

. The law seems to be well settled in this State as well as other jurisdictions, that if the insurance company, before the time expires for furnishing proofs of loss, denies the liability of the company, it is a waiver of the necessity to furnish them. Robinson v. Palatine Insurance Co., 66 Pac. 535; Royal Insurance Co. v. Martin, 192 U. S. 385; Taylor v. Merchants' F. Ins. Co., 9 How. 390; 19 Cyc. p. 859; Phenix Ins. Co. v. Luce, 123 Fed. 723; Phenix Ins. Co. v. Kerr, 129 Fed. 723; Bank v. Home Ins. Co., 111 Pac. 507; McCullough v. Home Ins. Co., 192 Pac. 814; Dooly v. Hanover Fire Ins. Co., 47 Pacc. 507.

Was the deed admissible in evidence?  Sec. 3964 and 3956, Comp. Laws 1897.

## STATEMENT OF FACTS.

This action was instituted by the appellee in the court below to recover the sum of $2,320.77 on account of a policy of insurance issued by the appellant on the 8th day of March, 1909, insuring for a period of sixty days the property described in the policy, which property was destroyed by fire on the 29th day of April, 1909.  The policy was issued in the name of M. Bryant in the sum of $4,000.  The facts, so far as material, are as follows:

Appellee was the owner of the lots described in the policy and was having a building erected thereon by M. Bryant, the contractor.  The appellee had furnished a large portion of the materials to be used in the building, and

had paid to the contractor a portion of the contract price.
He applied to the agent of the appellant for a policy of
insurance and stated to him: "I told him that I wanted
to take out a builder's risk on this building, and that I
was furnishing some of the material. Bryant was the
contractor." Appellee testified that that was all the con-
versation had with the agent at the time he applied for
the policy. The agent of appellant, who wrote the policy,
testified that appellee came to his office and asked him
to write $4,000 of builder's risk insurance. He said: "I
asked him if I had to write it in his name and he said,
'Yes,' and then he said, 'Well Bryant was the contractor'
and I said, well perhaps I had better write it in Bryant's
name, and that is about all the conversation we had." The
same witness, upon cross-examination, was asked the fol-
lowing questions and made the following answers:

"Q. As a matter of fact, Mr. Feagan, at the time of
this loss by this fire you thought that Mr. Dearborn's in-
terest was protected under that policy, didn't you?

"A. I thought it was by being insured in the policy,
yes sir.

"Q. And you thought that all along until the adjuster
refused to pay it, didn't you?

"A. Yes, sir, I thought it was in that way.

"Q. Then if you thought all along up to the time the
adjuster disclaimed the liability you must have intended
that at the time you wrote the policy, didn't you?

"A. Well I thought Mr. Bryant was the responsible
party by writing the policy that way.

"Q. You thought Mr. Bryant was the responsible
party yet you thought Mr. Dearborn's interest was pro-
tected under the policy.

"A. Yes, sir, in an indirect way."

The agent after writing the policy, retained it in his
office until after the loss.

The appellee by his complaint sought to have the policy
of insurance reformed, so that the appellee's name appear
therein as one of the insured, and to recover judgment
for the amount hereinbefore set out. The appellant ad-
mitted the issuance of the policy but denied that by in-

Dearborn v. Ins. Co., 17 N. M. 223.

advertance or mistake of its agent, the name of Bryant was inserted, and appellee's name omitted from the policy; alleged that it had paid to Bryant the loss by him sustained, amounting to the sum of $1,679 and that it held his receipt therefor. At the close of the testimony, the defendant moved the court for an instructed verdict, for the reason that the evidence failed to sustain the allegations of the complaint; that through inadvertance or mistake of its agent, the name of M. Bryant only was inserted in the policy. At the same time, the plaintiff moved the court to instruct the jury to return a verdict in his favor. The court instructed the jury to return a verdict in favor of the plaintiff, in the sum of $2,320.77. The verdict was returned and judgment was entered thereon in plaintiff's favor, from which judgment this appeal is taken.

### OPINION OF THE COURT.

ROBERTS, C. J.—The appellee, having filed a motion to strike the Bill of Exceptions from the files, we will first discuss this motion before considering the merits of the case. The motion was based upon the ground that the Bill of Exceptions was not signed and settled before the judge who tried the case. The cause was tried before the Hon. Wm. H. Pope, as Judge of the Fifth Judicial District, under the Territorial form of government. Upon the admission of New Mexico as a State, Judge Pope was succeeded by Hon. John T. McClure as Judge of the Fifth Judicial District. The Bill of Exceptions was not presented to Judge Pope, and the time not having expired within which the same could be settled and signed, the same was presented to and signed by Judge McClure. The appellee claims that the Territorial Supreme Court, in the case of Ross v. Berry, 120 Pac. 309, held that the Bill of Exceptions should be settled before the judge who tried the case. The facts, however, in the case of Ross v. Berry, supra, were altogether different from the facts in the case now before the court. In that case the Bill of Exceptions was not signed by the judge who tried the case, or his successors, but was presented to and signed

by the judge of another district. The matter of making up a Bill of Exceptions and settling the same, and the signing thereof, is regulated by statute. Sec. 26 of chap. 57, Session Laws of 1907, provide for the settling and signing of a Bill of Exceptions by "the judge or his successor." Judge McClure being the successor of Judge Pope, as Judge of said District, properly signed the Bill of Exceptions, therefore the motion to strike the Bill of Exceptions will be overruled.

This brings us to a consideration of the merits of the controversy. The appellant has assigned numerous grounds of error, but we shall consider only the points discussed by the appellant in its brief. It insists that the evidence did not justify a reformation of the policy, and this requires an examination of the evidence to enable us to determine whether or not there was subtantial evidence supporting the judgment in this regard. We have set out in the statement of facts practically all the evidence submitted upon the question of what occurred at the time the application for the insurance policy was made, except the fact that the premium on the policy was paid by the appellee or rather, was charged to the account of the appellee by the agent, who it appears, was indebted to the appellee, and the agent remitted to the company the amount of the premium. The court found, and so stated in an opinion rendered at the time of directing the verdict, that the evidence showed that there was a mutual mistake between the plaintiff and the defendant, acting through its agent in writing said policy contract.

The appellant relies largely upon the case of the Trustees of St. Clara Female Academy, etc., v. Dolliver Insurance Co., (Wis.) 66 N. W. p. 1140, for reversal, but as we read the case, the facts in that case and the one now before the court are not parallel. There a building was in process of erection by a contractor under a contract by which the trustees agreed to procure insurance to protect the interest of the contractor. The agent to whom application was made for the insurance knew nothing whatever about the contract. The application for the insurance

policy was made by Sister Mary Edmond, and she de-- scribed the transaction in respect to the insurance, in sub- stance as follows: "I told Mr. Hobbins I did not under- stand how insurance was taken out on a building in course- of erection, and that I left entirely into his hands to attend to it." On being asked what was said during the inter- view with the agent in relation to the contractor and his interest in the building, she answered: "I have no rec- ollection of Mr. McAlpine's (the contractor) name being- mentioned." The agent stated, upon being asked if it was his intention when he wrote the policies, to protect the interests of all the parties: "I could not say that, as I sup- posed I insured the sisters." The court in its statement of the facts said: "And the evidence is clear and decisive- that the agent Hobbins had not been requested by anyone- to insure McAlpine, or to make him a party to the poli- cies for any purpose whatever. The insurance was made to- the plaintiff as owner, and for a period of three years." The court says, in discussing the law:

"When it is said that a written agreement may be cor- rected or reformed so as to express and carry out the in- tention of the parties, this must be understood as applying to the intention of the parties by reason of some mutual agreement made between them, and upon which their- minds have actually mutually met, and not to some real or conjectural intention they may have separately enter- tained, but which never acquired the character of real con- tractual intention. As applied to the present case, it was not enough that McAlpine or the plaintiff, or both of them, intended to have the property insured for them as their- interest might appear. It was necessary for them, in order to have the relief demanded, that the defendant companies, or their agent so understood the matter, and undertook or agreed to write the insurance accordingly. While it is not material what language the parties used to- express their mutual intent, the court will carry it into effect and reform the instrument accordingly."

As we view the facts and the doctrine announced in the- case just considered, we think it supports the action of the lower court in the present case. It will be noticed that the-

court holds in that case that it is not material what language the parties use to express their mutual intent, but the question is whether their minds actually met upon a common understanding or mutual intent. In, the case now before the court, the appellee applied to the agent of the appellant for the policy 'of insurance. He stated that he was the owner of the property and was furnishing some of the material, and desired insurance, and that Mr. Bryant was the contractor. It must be understood that no question as to the rights of Mr. Bryant under the policy was before the court for consideration, but the sole question was as to the rights of the appellee thereunder. The agent who wrote the policy admits that the application was made by appellee as stated by him, but says further that he asked appellee if the policy should be written in his name, and he said "Yes," but that thereafter the agent suggested that as Bryant was contractor, it should be written in his name, to which appellee made no response. But the agent for the appellant says that he thought he was protecting Mr. Dearborn's interest under the policy, and that he thought Dearborn's interest was protected all along until the adjuster refused to pay it. Another strong circumstance tending to show that it must have been the mutual intention of the parties that the insurance should protect the interest of the appellee, was the fact that he paid the premium upon the policy in question. From the facts, we believe there was substantial evidence which justified the lower court in arriving at the conclusion that the name of the appellee was omitted from the policy, and that his interests were not protected thereunder by the mutual mistake of the parties.

The law, in respect to the effect of such a mistake is well settled by the courts. In the case of Snell v. Insurance Co., 98 U. S. p. 85, Mr. Justice Harlan speaking for the court says:

"We have before us a contract from which, by mistake, material stipulations have been omitted, whereby the true intent and meaning of the parties are not fully or accurately expressed. A definite, concluded agreement as to insurance, which, in point of time, preceded the preparation and

delivery of the policy, is established by the legal and exact evidence, which removes all doubt as to the understanding of the parties. In the attempt to reduce the contract to writing there has been a mutual mistake, caused chiefly by that party who now seeks to limit the insurance to an interest in the property less than that agreed to be insured. The written agreement did not effect that which the parties intended. That a court of equity can afford relief in such a case, is, we think, well settled by the authorities. In Simpson v. Vaughn, (2 Atk. 33), Lord Hardwicke said that a mistake was 'a head of equity on which the court always relieves.' In Henkle v. Royal Exchange, (1 Ves. Sen. 318), the bill sought to reform a written policy after loss had actually happened upon the ground that it did not express the intent of the contracting parties. The same eminent judge said: 'No. doubt but this court has jurisdiction to relieve in respect of a plain mistake in contracts in writing as well as against fraud in contracts, so that if reduced to writing contrary to the intent of the parties, on proper proof, would be rectified.' In Gillespie v. Moon, (2 Johns, (N. Y.) ch. 585)', Chancellor Kent examined the question both upon principle and authority and said: 'I have looked into most, if not all, of the cases in this branch of equity jurisdiction, and it appears to me established, and on great and essential grounds of justice, that relief can be had against any deed or contract in writing founded in mistake or fraud. The mistake may be shown by parol proof, and the relief granted to the injured party, whether he sets up the mistake, affirmatively by bill, or as a defense.' In the same case he said: 'It appears to be the steady language of the English chancery for the last seventy years, and of all the compilers of the doctrine of that court, that a party may be admitted to show, by parol proof, a mistake, as well as fraud, in the execution of a deed or other writing.' And such is the settled law of this court. Graves v. Boston Marine Insurance Co., 2 Cranch 419; Insurance Company v. Wilkinson, 13 Wall. 222; Bradford v. Union Bank of Tennessee, 13 How. 57; Hearne v. Marine Insurance Co., 20 Wall. 488; Equitable Insurance Co. v. Hearne, Id. 494. It would be a serious defect

in the jurisdiction of courts of equity if they were without the power to grant relief against fraud or mutual mistakes in the execution of written instruments. Of course parol proof in all such cases, is to be received with great caution, and, where the mistake is denied, should never be made the foundation of a decree, variant from the written contract, except it be of the clearest and most satisfactory character.

If the contracting parties to the policy of insurance made a mistake in the description of the premises, or in the names of the insured, a court of equity, upon proper

3  proof, has jurisdiction to reform the contract and correct the mistake, as held by the Supreme Court of the State of Illinois, in the case of German Insurance Co. v. Gueck, in a case reported and annotated in 6 L. R. A. p. 835. See also 19 Cyc. p. 651, and cases cited.

From the facts, detailed by the agent of the insurance company, there is no doubt but that the company, through its agent, undertook to write an insurance policy, that would protect Dearborn's interest in the property. Dearborn trusted to the agent to write such a policy, and the minds of the agent and of Dearborn met upon the proposition. It is true Dearborn did not direct how the policy should be written, but he acquiesced in the statement of the agent that it should be written in Bryant's name, but there was a mutual agreement and understanding that a policy of fire insurance should be written that would

4  protect Dearborn's interest in the property. The agent so understood and testified that he thought Dearborn's interest was protected until the adjuster came and refused to pay the loss to Dearborn. Why should not a court of equity reform the contract of insurance as written, to conform to the understanding of the parties which it was intended to express, but which it failed to express by reason of the mistake of the parties, as to the law or the facts? If the mistake be treated as a mistake of law, still a court of equity would have the power to reform the contract so as to express and fulfill the manifest intention of the parties to the agreement. Hunt v. Rousmannere, 1 Peters 1; 19 Cyc. 653. And this is sound in principle.

An insurance agent, not versed in law, and the owner of property desiring insurance, enter into an agreement for insurance. The agent and the party to be insured agree that a certain result shall be accomplished, viz., that a policy shall be written by the agent which will protect the interest of the party applying for the insurance in the property; the premium is paid; a loss occurs, and it develops, that through a mistake of fact, or law, which is mutual, the agreement as reduced to writing fails to carry out the real contract which the parties sought to enter into. Why should not a court of equity reform the contract, so that it will conform to the real agreement of the parties, and enforce it, where the proof is clear, and there is no doubt of the mistake? We think every principle of justice and right demands the correction of the mistake and the enforcement of the contract. In this case the insurance company, through its agent attempted to write the policy according to the understanding of both parties and to effectuate insurance that would protect Dearborn. Its agent and Dearborn thought this had been accomplished, but it develops that through a mistake either of fact or law, the written contract did not express the real agreement of the parties. Under the facts we think the lower court did not err in reforming the contract of insurance and rendering judgment for the appellee. The cause is therefore affirmed.