191 P.2d 993

**MILLER v. PHŒNIX ASSUR. CO., LIMITED, OF LONDON, et al.**

No. 5027.

Supreme Court of New Mexico.

March 3, 1948.

Rehearing Denied April 23, 1948.

W. C. Whatley and Thomas K. Campbell, both of Las Cruces, for appellants.

J. B. Newell, of Las Cruces, for appellee.

COMPTON, Justice.

Appellee, G. O. Miller, instituted this suit to recover on two fire insurance policies issued by appellants covering building, contents, merchandise and equipment.

Answer was filed; liability was denied, and as an affirmative defense, appellants alleged that liability under the policy was voided on account (a) that appellee did not own the ground upon which the building was located, (b) that he did not make an inventory each twelve months, etc., (c) that proof of loss was not rendered and (d) that suit for recovery under the policy was not instituted within the twelve months next after the loss. The case was tried to the court without a jury and from an adverse judgment, appellants bring this appeal.

The matters of the affirmative defense are admitted; but appellee contends that appellants, by acts and conduct, waived these requirements, consequently, are estopped from asserting them as a defense.

It is shown in evidence that Mrs. Floyd Hackler, owner of the ground upon which the building in question was situated, leased the premises in 1934 to H. L. Chapman. The lease provided that all improvements placed upon the premises by lessee, at its expiration, might be removed. Chapman constructed an addition in such a manner as to become a part of the building known as the Rock Front Bar. In September, 1942, Chapman assigned the lease to J. C. Moon, the assignee, purchasing it for himself and appellee Miller. Thereafter, and prior to the time the policies sued on were issued, appellee acquired the lease and, at the time of the fire, was the absolute owner. Previously, for a period of several years, the interest of lessees in the building, had been insured by appellants. In 1943, without an application therefor, appellants renewed the policies covering the interest of appellee in the building. Appellee made no representations concerning the title except to tell appellants to insure his interest in the building. He never saw the policies nor knew their contents until they were delivered to him.

The Fireman's Fund policy was annual, with paid up premium. The Phoenix Assurance Company policy was for the term of three years. By agreement of the parties, appellee paid 40% of the premium and gave his note for the balance, payable to appellants' agent in equal annual instalments, one and two years after date. The agent, after deducting his commissions, remitted the premiums in full to appellants. The

agent then financed the immediate payment of the premium note through First Bancredit Corporation and thereby reimbursed himself.

The building and contents were destroyed by fire on April 2, 1944. Immediately thereafter appellants, being informed of the loss, caused an adjuster to negotiate with appellee. A non-waiver agreement was signed by them. The adjuster was then informed of appellee's title, his interest in the building and was furnished lists of equipment and invoices and other available information. The adjuster, not satisfied with appellee's claim, and subsequent to the time within which appellee was required to render proofs of loss, put appellee to the expense of furnishing certified copies of invoices. On September 13, 1944, he was required to travel from his home in Alamogordo, to Las Cruces, New Mexico to submit to an examination under oath as to his interest in the building, the cause and extent of the loss. We quote, in part, from that proceeding:

"Q. Would you have any objection to producing copies of your income tax reports showing that you had, as a matter of fact returned the income from this Rock Front Bar after Bogart had taken over? A. I don't think so.

"Q. *And you will do that whenever called on?* A. I think so.

"Q. Would you have any objection to the Internal Revenue Department of the State of New Mexico—the Sales Tax Division—*furnishing us* with copies of your sales tax reports made on the Rock Front after Doc Bogart had taken over? A. I don't think so.

"Q. Do you now consent that *we may procure from the Sales Tax Division* of the Bureau of Revenue, copies of the sales tax reports made on the Rock Front Bar for the period after Bogart took over? A. As far as I am concerned, Mr. Benson Newell is handling this.

"Q. If Mr. Newell has no objection to the Sales Tax reports *being furnished us,* you yourself will have no objection? A. If he sees fit." (Emphasis ours)

Thereafter, on October 4, 1944, by joint letter, appellee and his attorney granted appellants the authority to procure the requested records from the Bureau of Revenue. It is also shown in evidence that after demand for payment under the policies had been made, appellants retained the premiums.

The single question presented for our determination is whether, under the Doctrine of Waiver and Estoppel, appellants, by their acts and conduct, are precluded from relying upon their affirmative defense.

Waiver is the intentional abandonment or relinquishment of a known right. Smith v. New York Life Insurance Company, 26 N.M. 408, 193 P. 67. Estoppel

is the preclusion, by acts or conduct, from asserting a right which might otherwise have existed, to the detriment and prejudice of another, who in reliance on such acts and conduct, has acted thereon. Tucker v. Brown, 20 Wash.2d 740, 150 P.2d 604.

Where ownership is material to the risk such ownership must be correctly stated and as a rule the policy will be void if the subject of the insurance is on grounds not owned in fee. But this rule is modified, and we think properly so, in those cases where the interest of the insured is disclosed. Stout v. City Fire Insurance Company of New Haven, 12 Iowa 371, 79 Am. Dec. 539; Dooly v. Hanover Fire Insurance Company, 16 Wash. 155, 47 P. 507, 58 Am.St.Rep. 26. And the rule is definitely repudiated in those cases where, as here, no application was made therefor. German Insurance and Savings Inst. v. Kline, 44 Neb. 395, 62 N.W. 857; Burrows v. McCalley, 17 Wash. 269, 49 P. 508. The rule, as generally construed, means that disclosure of title, though not full, is sufficient if such disclosure is sufficiently definite to put the insurer on inquiry. Phenix Insurance Co. v. Stocks, 149 Ill. 319, 36 N.E. 408; Fame Insurance Company v. Mann, 4 Ill.App. 485; Miotke v. Milwaukee Mechanics' Insurance Company, 113 Mich. 166, 71 N.W. 463; McCoy v. Iowa State Insurance Company, 107 Iowa 80, 77 N.W. 529. Cf. Dearborn v. Niagara Fire Insurance Company, 17 N.M. 223, 125 P. 606;

Smith v. New York Life Insurance Company, supra.

As has been seen, the loss occurred on April 2, 1944. Appellants have retained the premiums but did not deny liability until after contractual period of limitation had expired. They failed to refund or tender unearned premiums in their answer or at the trial. Consequently, the case does not fall within the rule announced in the well recognized case of Goorberg v. Western Insurance Co., 150 Cal. 510, 89 P. 130, 10 L.R.A.,N.S., 876. 119 Am.St.Rep. 246, 11 Ann.Cas. 801. Waiver may arise from the retention of benefits as where an insurer accepts or retains premiums after demand for payment of the loss. It is then estopped to deny liability. McConnell v. Southern States Life Insurance Company, 5 Cir., 31 F.2d 715; Insurance Company of North America v. McDowell, 50 Ill. 120, 99 Am.Dec. 497; Esch v. Holmes Insurance Company, 78 Iowa 334, 43 N.W. 229, 16 Am.St.Rep. 443. And waiver may also arise by putting the insured to trouble and expense, and this may take the form of an examination of the insured. People's Fire Insurance Co. v. Pulver, 127 Ill. 246, 20 N.E. 18; Wicking v. Citizens' Mutual Fire Insurance Co., 118 Mich. 640, 77 N.W. 275.

"Generally an insurer is precluded from asserting a forfeiture where, after acquiring knowledge of facts constituting a

breach of condition it retains the unearned portion of the premium, or fails to tender it back with reasonable promptness. * . * * An insurer will not be permitted to retain unearned premiums paid and still deny liability." 16 Appleman, Insurance Law and Practice, § 9303.

To the same effect, Washington National Insurance Co. v. Scott, 231 Ala. 131, 164 So. 303; ·Catholic Order of Foresters v. Collins, 51 Ind.App. 285, 99 N.E. 745; Horswill v. North Dakota Mutual Fire Insurance Company, 45 N.D. 600, 178 N.W. 798; German Insurance Company v. Gibson, 53 Ark. 494, 14 S.W. 672.

Subsequent to the examination, nowhere does the record show that appellants called on appellee to produce copies of state income tax reports or other records tending to establish the loss, nor does it show that appellants made any efforts to obtain from the Bureau of Revenue copies of sales tax reports. The failure to request these records, meanwhile retaining premiums, may well have caused appellee reasonably to believe that appellants waived compliance with policy provisions now relied on to defeat recovery, or have given appellee grounds reasonably to believe that compliance therewith would not be exacted. Friedberg v. Insurance Co. of North America, 257 Mich. 291, 241 N.W. 183.

A careful consideration of the evidence is convincing that the acts and conduct of appellants induced appellee to delay action beyond the contractual period within which suit may be brought under the policy. A suit, pending negotiations to supply further evidence when notified, would have been inconsistent with the acts of the parties and their apparent intention. If appellants did not intend to waive policy restrictions relied on and negotiate further we fail to understand the effect of the examination. Mere silence, thereafter, was not enough to work a forfeiture of appellee's rights under the policy.

What has been said applies with equal force to the terms of the non-waiver agreement. A non-waiver agreement itself may be waived by conduct, the same as stipulations in the policies. Queen Insurance Co. v. Patterson Drug Co. 73 Fla. 665, 74 So. 807, L.R.A.1917D, 1091. The purpose of a non-waiver agreement is to expedite and facilitate an immediate investigation of the claim, the ascertainment of values and the loss or damage. It cannot be regarded that appellants were proceeding under the terms of the non-waiver agreement when they conducted the examination.

In our opinion, the trial court correctly concluded that appellants, by their acts and conduct, waived the stipulations urged as their affirmative defense, and being once waived, it was unnecessary that suit be instituted within twelve months next after the loss, or at any other time except within the statute of limitations. It follows

that appellants are estopped from asserting the affirmative defenses pleaded.

The judgment is affirmed and remanded, with directions to the trial court to reinstate the case upon its docket and enter judgment in favor of the appellee and against appellants and the surety on their supersedeas bond, and it is so ordered.

BRICE, C. J., and LUJAN, SADLER, and McGHEE, JJ., concur.