## SMITH et al. v. NEW YORK LIFE INS. CO.

[No. 2358.    Sept. 20, 1920.]

[Rehearing Denied Nov. 12, 1920.]

### SYLLABUS BY THE COURT.

1.  The principal is responsible for the unauthorized acts of the agent, where the conduct of the principal justifies the party dealing with the agent in believing that such agent was acting within, and not in excess of, the authority conferred upon him.                                                      P. 411

2.  Where the soliciting agent of a life insurance company had, at the request of the insured, written to the general office of the company upon three or four occasions, asking as to the amount owing by the insured, and upon receiving a reply had accepted the money from the insured in payment of such indebtedness and premiums, and forwarded the same to the company, which was accepted and the premium receipt sent by the general office direct to the insured, but such agent had never undertaken to extend the time for paying a premium or any indebtedness due the company, these facts did not authorize the insured to believe that the agent had authority to waive prompt payment of premiums and to extend the time for paying the same.                                           P. 411

3.  A "waiver" is the intentional abandonment or relinquishment of a known right.                                    P. 418

Appeal from District Court, Santa Fe County; Holloman, Judge.

Action by Herbert W. Smith and another against the New York Life Insurance Company. Judgment for

plaintiffs, and defendant appeals. Reversed and remanded, with direction to enter judgment for defendant.

*FRANCIS C. WILSON, of Santa Fe, DANIEL K. SADLER, of Raton, and J. H. McINTOSH, of New York City, for appellant.

McFIE, EDWARDS & McFIE, of Santa Fe, for appellees.

OPINION OF THE COURT.

ROBERTS, J. On February 27, 1913, the New York Life Insurance Company issued to Herbert W. Smith a life insurance policy, No. 4440058, for $7,500, upon which the annual premium was $241.58, and in which his wife, Mary Isabel Smith, was named as beneficiary. Appellees at the time resided in Toledo, Ohio, where Smith was engaged in business and apparently in partnership with a man named Dickerson. The policy in question provided that, should the insured become permanently disabled during the life of the policy the company, upon satisfactory proof to that effect, would pay him annually, so long as such disability continued, in cash, one-tenth of the face value of the policy, and during such time the insured should not be required to pay the annual premium provided for. The policy also contained the usual cash surrender value provisions, and provided for a loan, at a stated rate of interest, of an amount which, together with the annual interest thereon, should equal the cash surrender value of the policy at a given date. The policy contained a provision regarding the payment of premiums as follows:

"All premiums are payable on or before the due date at the home office of the company, or to an agent of the company, upon delivery of a receipt signed by the president, vice president. a second vice president, a secretary or the treasurer of the company, and countersigned by said agent."

And further as follows:

"No agent is authorized to waive forfeitures, or to make, modify, or discharge contracts, or to extend the time for paying a premium."

And the application, which by express policy pro-

visions was made a part of the insurance contract, also provided:

"That only the president, a vice president, a second vice president, a secretary, or the treasurer of the company can make, modify, or discharge contracts, or waive any of the company's rights or requirements."

The annual premium on this policy became due February 27, 1916, on which date there was outstanding a loan made to the insured, on security of said policy, on March 22, 1915, in the sum of $316. The loan agreement, or blue note, as such agreements were known, evidencing said indebtedness, provided, among other things, that said loan should, without demand or notice, become due and payable if there was default in the payment of any premium on said policy, and that the amount thereof should be deducted in the manner provided in said policy. The premium due February 27, 1916, was not paid when due, nor within the month of grace provided for by the policy. Accordingly, under the terms and provisions of the said policy, the same lapsed and had no value, except such as was therein provided by way of cash surrender value or paid-up or extended insurance. Thereafter, and under date of April 4, 1916, the said Herbert W. Smith made written application to the company for the reinstatement of said policy, and in connection with said application made a deposit of $43.75 in cash, and executed a note in the sum of $217, due April 27, 1916, whereby, subject to said application for reinstatement being favorably acted upon, said policy was continued in force until the due date of the note. The application was favorably passed, and the policy thus continued in force until midnight of the due date of the note, namely, April 27, 1916.

We here set out the material provision of the note, which was contained also in a similar note subsequently executed, as follows:

"(2) If this note is paid on or before the date it becomes due, such payment, together with said cash, will then be accepted by said company as payment of said premium, with interest, and thereupon and thereby said policy and all ben-

efits thereunder shall be reinstated; but (3) if this note is not paid on or before the date it becomes due, it shall thereupon automatically cease to be a claim against the maker, and said company shall retain said cash as part compensation for the rights and privileges hereby granted, and thereafter all rights under said policy shall be the same as if the said cash had not been paid or said application for reinstatement made."

Smith did not pay the note on or before April 27th, and the note under its terms ceased to be a claim against him, and the company marked the policy "lapsed" for nonpayment of the February 27, 1916, premium.

[1, 2] On May 13, 1916, insured made another application for reinstatement, deposited with the company $26.80 in cash, and executing a second note, the amount of which was $192, and the due date June 27, 1916. The application was favorably acted upon, and the policy continued in force to June 27, 1916, the due date of said note. The insured did not pay the note on or before June 27, 1916, the due date thereof, and afterwards the company marked the policy "lapsed" on its records for nonpayment of the February 27, 1916, premium.

Appelle contends that the payment of the note which represented the balance of the February 27, 1916, premium on its due date, essential under the terms of the policy to continue the insurance in force, was waived by the company under the facts and circumstances hereinafter set forth; that said note was paid on the 31st of July, 1916, and thereby the insurance was continued in force and was in force at the time of the institution of this suit. On the part of the company it was contended that there was a default in the payment of the note due June 27, 1916, by virtue of which the policy lapsed; that thereafter, on July 31, 1916, Smith signed an application for reinstatement of the policy, in which certain questions were asked by the company and answered by Smith in regard to the state of his health, upon the strength of which answers and the payment of the amount required the policy was reinstated; that the answers were false and fraudulent, and later the com-

pany canceled the policy because of such fraudulent misresenations.

Smith paid the February 27, 1917, premium by the execution of a blue note and the payment of the stipulated amount in cash, which was accepted by the company, at which time the company had no knowledge of the falsity of the statements and representations contained in the application for reinstatement dated July 31, 1916. On June 5, 1917, the insured executed certain papers and forwarded the same to the company, as purported proof of disability, in connection with an application for waiver of premiums on said policy, under and pursuant to certain policy provisions granting a waiver of premiums on conditions named therein. Said papers were received by the company at its home office on June 11, 1917, and consisted of statement No. 1, application for waiver, signed and sworn to by Smith on June 5, 1917; statement No. 2, a physician's statement, signed by Dr. F. E. Mera, dated June 5, 1917; and statement No. 5, report of company's medical examiner, bearing the same date. All these papers show that early in August, 1916, appellee Smith was in Santa Fe, N. M.; that he had tuberculosis of both lungs, and was at the time completely disabled. Upon receipt of these papers the company began an investigation, and ascertained that the statements contained in the application for reinstatement, dated July 31, 1916, were false, in that therein Smith stated that he was in sound health and that he had not consulted a physician; that in truth and in fact Smith had consulted a physician in June and July, and had been advised prior to the application for reinstatement that he was afflicted with athletic tuberculosis.

After making the investigation, the company advised Smith that the reinstatement of the policy was set aside on account of the fraudulent misrepresentations, and the cash paid and notes execued were returned, but not accepted by Smith. Thereupon appellees instituted this suit against the company in the district court of Santa

Fe county to compel the company to continue said policy of insurance in force and to pay to the appellee Smith, so long as his disability continued, then alleged to exist, the sum of $750 annually. After hearing the evidence the court made findings of fact, and stated conclusions of law, and rendered judgment requiring the company to continue the policy in full force and effect, and to pay the insured annually the said sum of $750 so long as the disability continued. To review this judgment the appeal is prosecuted.

This opinion will be confined to what we conceive to be the controlling questions. If in fact the policy had lapsed on June 27, 1916, by virtue of the nonpayment of the note then due, and was not revived by reinstatement upon the application therefor, dated July 31st, unquestionably the policy was properly canceled by the company. Appellee Smith, testifying as a witness, admitted that he had falsely stated in such application for reinstatement that he had not consulted a physician within the inquired time, or received treatment by a physician; that he had stated therein that he was in sound health, which beyond question was untrue, and known to him to be false at the time, notwithstanding his attempt as a witness to show otherwise. In fact, his attorney here does not attempt to substantiate the truth of the answers in such application, and here, as in the court below, bases his claim upon no rights accruing by virtue of such reinstatement.

Appellee's theory as to the application for reinstatement may be stated as follows: He had two policies in the company, one for $1,000, the premium upon which was due July 2d or 3d, and the 30 days' grace period carrying the same to August 1st or 2d. He had applied for a loan from the company on the smaller policy, which he was not assured would be received prior to the grace period. He was leaving Toledo, Ohio, for New Mexico on July 31st or August 1st, and signed the application for reinstatement and left it with the agent at Toledo, to be used in connection with the smaller

policy, should it lapse by reason of the nonpayment of the premium. No dates were filled in, nor the number of the policy—nothing save the signature of the appellee Smith and his wife; that the agent at Toledo, before forwarding it to the general office at Cleveland, Ohio, or some one in the Cleveland office, filled in the blanks to show that the application was to be used in connection with the $7,500 policy, No. 4440058; that the fraudulent representations thereafter made in the application for reinstatement had no effect to avoid the policy in question.

Appellee's theory, upon which he justified a recovery, and which was adopted by the trial court, as shown by findings of fact and conclusions of law, may be stated as follows: The note, as stated, was due on June 27, 1916. It contained the provision quoted in the statement of facts as to the effect of nonpayment. There was an agent of the New York Life Insurance Company doing business in Toledo, Ohio, having an office, from whom the insured had upon prior occasions ascertained the amount of premium due on this policy, and the amount due under blue notes, which appellee Smith almost always carried; that frequently the amount so stated to be due the company was turned over to the agent at Toledo, and by him remitted to the general office at Cleveland, Ohio, from which office he would receive an official receipt of the company, sent direct to Smith; that the said agent at Toledo kept in stock blank applications for reinstatement of policies; that on June 20, 1917, Smith called at the office of the agent in Toledo, and stated that he desired to execute a blue note for the amount that would be available under the loan provision of the policy upon the payment in full of the February 27, 1916, premium, the amount of which, of course, clearly appeared in the table of loan values; that he executed such a note, and asked the party in charge of the office as to the amount of cash required, in addition to the face value of the blue note, to liquidate the said February premium. The person in charge of the office was not able to give him the amount, and advised

that he would write to the general office at Cleveland
and ascertain for Smith the exact amount; that he left
the blue note with the person in charge of said office,
and had at the time he was there a check book in his
pocket, and was prepared to and offered to pay what-
ever additional amount was required to so liquidate the
February premium; that thereafter he called at the
office before the 27th, but the agent had not received the
information from the Cleveland office; that several times
during July he called, and failed to get the desired in-
formation until July 27th or 31st, when the amount of
cash required was paid by either Smith or his partner,
Dickerson, and the blue note executed and left with the
agent on June 20th, and the cash paid was remitted to
the Cleveland office by the Toledo agent.

It will thus be seen that appellee Smith based his
claim to a recovery upon the theory that Steele, the
agent of the New York Life Insurance Company at
Toledo, Ohio, in all the matters referred to was the
agent of the company; that he was acting for the com-
pany in accepting the blue note on June 20th, and in
ascertaining the balance of cash required to satisfy the
February premium; that he waived the provision of
the policy and the note, under which the policy would
have been forfeited by the failure of appellee to pay
the note on June 27th; and that his act in so waiving
the provisions of the policy was binding upon the com-
pany.

Appellee first advances a rather ingenious argument to
sustain the recovery awarded, which requires but brief
notice.   On June 20th appellee says that he executed a
blue note to the company for $435, which was the full
loan value under the policy, upon payment in full of
the February premium.   When this premium was paid,
the loan value of the policy was increased accordingly
from $316 to $435.   This note, together with $79.58 in
cash, and the cash that had been paid in connection with
the two reinstatements shown in the statement of facts,
would have liquidated in full the annual premium due

in February, and the old blue note for $316, and the interest owing to the company.

Appellee Smith contends that, when he executed the note and left it with Steele, the Toledo agent, for $435, this note, together with the cash which he had paid theretofore, liquidated the old blue note, and left to be applied upon the premium the sum of $119 or $120; that notwithstanding the failure to pay the cash, $79.58, necessary to fully liquidate the premium and indebtedness, the acceptance by the Toledo agent of this note left the amount stated, $119 or $120, which was a credit upon the annual premium, and prevented the lapsing of the policy; that by so doing the company waived the default as a matter of fact and of law, or in effect that the blue note constituted a credit which kept the policy in force.

This contention is manifestly unsound for two reasons: First, the policy required the payment of the annual premium in full; and, second, there was no payment on June 20th of $119, or any other sum on the premium or blue note for $316, for the following reasons: The policy had a loan value of $435 only upon payment of the February premium. If the company had received the $79.58 in cash and had accepted this blue note for $435, Smith's past indebtedness to the company would have been liquidated; but until the full payment of the February premium the old blue note for $316 represented the full loan value of the policy. Consequently there was no payment to the company of the $119 or $120. The main theory upon which appellee based his right to a recovery, and which was adopted by the trial court, is, we assume, stated most favorably by his counsel, and we quote from his brief as follows:

"By one section of the policy all premiums are payable on or before the date due, at the home office of the company or to an agent of the company, upon delivery of a receipt signed by the president, a vice president, a second vice president, a secretary, or the treasurer of the company, and countersigned by said agent. The custom established in this case by the evidence is that it was the practice of Smith & Dickerson to

pay their premiums to the agents of the company in Toledo office, and that no notice that such agent had no authority to accept these premiums was given. Premiums so paid were forwarded by such agents to the Cleveland branch office. Whether the officers of the company in New York knew of this practice or not is immaterial. It is their business to know what their agents are doing. So long as no claim was presented under the policy, they acquiesced and accepted such payments. Now they desire to enforce the literal terms of the policy, and deny the authority of such agent to accept premium payments or to bind the company in any way. It is significant, too, that in the Toledo office was a stock of blanks for the use of policy holders, used by them in order to secure loans, extension of time for paying premiums, and in making application for reinstatement. While the insurance company may have had some system of its own by which it considered that the Toledo agents were mere soliciting agents, and that they had nothing to do with the collection of premiums, yet the facts are that these agents were in an office labeled 'New York Life Insurance Company' on the door. On the private door was the sign 'Charles Steele, Manager.' A lady clerk or stenographer was employed in this office, who, under the direction of the manager, produced a policy loan agreement for Smith to sign. The name of the company and the location of its Toledo office appeared in two telephone directories, and in this office premium payments were accepted from policy holders. We submit that these facts would lead any person to believe that Mr. Steele was the company's 'authorized agent,' that these were such 'habits of business,' 'acts,' and 'course of conduct' which would 'induce an honest belief in the mind of the policy holder,' 'reasonably founded,' that any dealings that he had with such agent were binding upon the company, and that the strict provision of the policy with reference to the payment above quoted would not be enforced by the company."

Evidently the trial court found and concluded, because Steele, the agent at Toledo, had theretofore made inquiry from the general office at Cleveland as to the amount of Smith's indebtedness to the company, and, upon being advised, had accepted the amount from Smith and forwarded it to such general office, that Smith, the insured, was led by the acts of the company to believe that Steele was the company's "authorized agent," and was empowered to not only collect premiums due, but to waive provisions in the policy. The evidence conclusively shows that Steele, the Toledo agent, was only a soliciting agent and had no further authority. The written contract under which he was employed is

in the record. Of course, Steele might have so con-
ducted himself toward the insured, Smith, with the
knowledge and consent of the company, by which estop-
pel would have arisen against the company to have as-
serted Steele's lack of authority. The principal is re-
sponsible for the unauthorized acts of the agent, where
the conduct of the principal justifies a party dealing with
the agent in believing that such agent was acting with-
in, and not in excess of the authority conferred upon
him. The most that can be said, accepting appellee's
testimony as true, is that Steele, the agent in Toledo,
had inquired from the Cleveland office, as stated, the
amounted of Smith's indebtedness, and upon receipt of
the reply had accepted the money and forwarded it to
the Cleveland office. Steele had not extended thereto-
fore, nor attempted to, the time of the payment of the
premium; and, if appellee prevails here, it must be under
the theory that Steele was authorized to or was acting
within the scope of his authority when he, in effect, ex-
tended the time for the payment of the note due June
27th, representing, as stated, the balance of the Febru-
ary premium. That he had no express authority from
the company to grant such extension is not contended;
nor, as stated, is it insisted that he had ever theretofore
attempted to exercise such authority. "A 'waiver' is
the intentional abandonment or relinquishment of a
known right." See Words and Phrases, Second Series.

[**3**] To constitute a waiver it must appear that there
was an intent to waive the right, and the evidence wholly
fails to show that there was even an intention on the
part of Steele, assuming that he had the power, to waive
payment of the note at the time of its due date, namely,
June 27th, or ratification by the company. In a letter
written to the Cleveland office, which is in evidence, it
clearly appears that Steele did not know that Smith,
the insured, was expecting further time in the payment
of this note, for in the letters he advises the Cleveland
office that he will attempt to get Smith to reinstate the
$7,500 policy, which had been forfeited by failure to

pay the note. Again, in August or September, Smith received from the Cleveland office a receipt for the blue note and cash payment which accompanied his application for reinstatement; the receipt clearly showing that the money and note were received as a reinstatement of the policy, and not, as he contends, in payment of the February premium, which he retained without protest until the company canceled his policy for fraudulent representations in the application for reinstatement. The facts show without conflict, we think, that Steele, the Toledo agent, had no authority to accept premium payments, nor to waive any of the provisions of the policy, and that Smith knew, by the very terms of the policy itself, that Steele had no such authority. Steele's conduct, upon which appellee must stand, and such conduct must have been known to and ratified by the company prior to the negotiations of June 20th, did not go far enough to afford a basis for a conclusion by appellee that Steele had authority to waive the prompt payment of premiums or other indebtedness due the company, or to extend the time for paying the same. The most that could be said is that by course of conduct the company would have been estopped from contending that Smith could not have paid the premium to Steele, because that is all that had been done theretofore. If Steele had undertaken theretofore to extend further time to Smith to pay a premium or other indebtedness, and such action had been acquiesced in by the company, then there would have been a basis for the claim that Steele had authority to and did waive the timely payment of the note due June 27th.

The authorities upon the question of waiver of the provisions of insurance policies, designed for the protection of the company, are numerous and very conflicting; but, under the most favorable view of any of the decisions, the act herein failed to constitute a waiver of the provisions of the policy by which it became forfeited for failure to pay the premium. The general office at Cleveland, when it accepted the cash and blue note, dated

June 27, 1916, did so by virtue of the application for reinstatement which Smith, a year later, contended was to be used in connection with the $1,000 policy under certain circumstances. The local agent at Toledo testified that he understood the application for reinstatement was to be used in connection with the $7,500 policy, and everybody, save Smith, so understood. To say the least, there was no meeting of the minds of Smith, on the one hand, and the agent of the company, on the other, upon anything which would have constituted a waiver.

The undisputed facts show conclusively that Smith knew that Steele, the Toledo agent, had no authority to extend the time for paying the premium or any indebtedness due the company. His policy had been forfeited for failure to pay the premium due February 27, 1916, and this on the 27th day of March, 1916, the grace period provided by the policy. Again, it was forfeited by his failure to pay the note due April 27th, and we find him applying for a reinstatement on May 13th thereafter. He was afraid his small policy would become forfeited because his loan would not be approved within the time limited for paying the premium. During all these forfeitures for his failure to pay when due, never once did he apply to Steele, the agent, for an extension of time. If Steele had the claimed authority, or at least if he thought Steele had it, it is strange, to say the least, that he did not apply to him for a few days' extension on the premium due on the small policy, rather than execute the application for reinstatement, to be used when the policy should be forfeited and his loan approved. These facts clearly show that Smith did not believe that Steele had the authority which he now relies upon.

The judgment of the lower court was clearly erroneous, and the case will be reversed, and remanded to the district court, with instructions to enter judgment for the appellant; and it is so ordered.

PARKER, C. J., and RAYNOLDS, J., concur.