13 P.(2d) 412

**BLOODGOOD v. WOMAN'S BEN. ASS'N.**

**No. 3643.**

Supreme Court of New Mexico.

July 18, 1932.

George W. Miller, of Chicago, Ill., and Edwin Mechem, of Las Cruces, for appellant.

R. R. Posey, of Las Cruces, for appellee.

BICKLEY, C. J.

Appellee, hereafter referred to as the plaintiff, as beneficiary named in a benefit certificate issued by appellant association to the wife of appellee, brought suit to recover upon same which resulted in judgment for appellee.

The case was tried upon the pleadings and a written stipulation of facts which the court in effect adopted as its findings of fact. From such pleadings and stipulation it appears that the wife of the appellee became a member of the association in 1915 and that she died on June 4, 1929; that the appellant is a fraternal benefit association organized under the laws of the state of Michigan and having its principal office and place of business in said state, qualified and authorized to do business in New Mexico, and maintained a subordinate organization in Dona Ana county, N. M., where plaintiff and his deceased wife resided, known as "Subordinate Mesilla Valley Review No. 4," of which plaintiff's wife was member at the time of her death; that each local review of said association elects its own officers and conducts its own affairs, which officers consist of a president and financial secretary. The financial secretary is authorized to receive and did receive dues, fees, and assessments from the members and forward same monthly to headquarters at Port Huron, Mich.; that the plaintiff's wife failed to pay her dues for the month of April, 1929, on or before the 20th day of said month; that on May 13, 1929, and within the first two months from the time she should have paid her monthly dues, the plaintiff, on behalf of his wife, remitted to the financial secretary of the local review the amount of the dues for April and May, 1929; that on June 1, 1929, plaintiff remitted to the said financial secretary the dues for the month of June, 1929; that the financial secretary received, retained, and forwarded said dues to the parent association at Port Huron, Mich., and issued receipts covering these months, in the total sum of $5.85; that on September 16, 1929, defendant association tendered to plaintiff $5.25 which defendant refused, $0.60 being dues of the local review were not tendered until defendant's answer was filed; that the health of the deceased member was not at all times good and was not good at the time her dues were remitted in May, 1929, which fact was well known to the subordinate review, and the members thereof; that the local financial secretary knew the poor state of health of the wife of plaintiff at the time such secretary received, retained, and forwarded to headquarters the dues, fees, and assessments for the months of April, May, and June, 1929; that no method is provided for by the association, nor the subordinate review, for determining the health of a member seeking reinstatement; that it is not admitted or agreed that the parent association knew the state of health of plaintiff's wife at the time the fees, dues, and assessments were remitted to the local financial secretary in April, May, and June, 1929; that the following is a copy of a letter received by plaintiff from the financial secretary of the local review:

"Las Cruces, N. M., June 4, 1929.
"Mr. D. W. Bloodgood
"Dear Mr. Bloodgood:

"Enclosed is receipt for June payment of W. B. A. dues. Your receipt for April and May has been mailed to you. Please hold these two receipts.

The members and officers of the W. B. A. extend their sincere sympathy to you and your family at this time, the death of our beloved sister and your faithful and beloved wife.

"Fraternally,
[Signed] Dovie Love, Sect."

It was further stipulated that the following is a copy of a part of the statutes of the state of Michigan with reference to fraternal benefit associations, and which statutes of Michigan (Comp. Laws 1929, §§ 12483, 12498) are an exact copy of section 71-308 and section 71-320 of the New Mexico Statutory Law Code 1929:

*Certificate, What to Specify, etc.*—"*Certificate.* Every certificate issued by any such society shall specify the amount of benefit provided thereby, and shall provide that the certificate, the charter or articles of incorporation, or, if a voluntary association, the articles of association, the constitution and laws of the society and the application for membership and medical examination, signed by the applicant, and all amendments to each thereof, shall constitute the agreement between the society and the member, and copies of the same certified by the secretary of the society, or corresponding officer, shall be received in evidence of the terms and conditions thereof, and any changes, additions or amendments to said charter or articles of incorporation, or articles of association, if a voluntary association, constitution or laws duly made or enacted subsequent to the issuance of the benefit certificate shall bind the member and his beneficiaries, and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to and were in force at the time of the application for membership."

"Waiver of the provisions of the laws. The constitution and laws of the society may provide that no subordinate body, nor any of its subordinate officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof, and on all beneficiaries of members."

That the following sections of the laws and constitution of the defendant association apply to suspended members and reinstatement of members:

"Section 360 of the Laws of the Association reads:

" 'A benefit member failing to pay the regular monthly rates on or before the 20th day of the month in which they were due thereby suspends herself, and shall stand suspended without notice or action of any officer, from all rights of benefit membership and from all the privileges and benefits of her review and of the association.'

"Section 367 of the Laws of the Association, provides:

" 'A benefit member who has suspended herself by non-payment of rates or other liabilities, as hereinbefore provided and defined, if in good health, may within the first two months following the month in which such monthly rate or other liability became due reinstate herself and thus again become a member of the Association by paying all amounts due at the date of her suspension and which may have become due in the meantime. Whenever such payments are made by or for a person who has become suspended for the purpose of again making her member, such payments shall be held to warrant that she is at the time of making such payments in good health and to warrant that she will remain in good health for thirty days after such attempt to again become a member, and to contract that such payments when so made after she has become suspended shall be received and retained without waiving any of the provisions of this section or of these laws until such time as the supreme secretary shall have received actual, not constructive or imputed knowledge, that the person was not in fact in good health when she attempted to become a member again; provided, that the receipt and retention of such payments in case such person is not in good health shall not make such person a member or entitle her or her beneficiary or beneficiaries to any rights whatever. The retention by the association of any such payments made by or for any person after she has become suspended in order to make her a member again shall not con-stitute a waiver of any of the provisions of these laws an estoppel upon the society. Any attempt by a suspended member to become a member again shall not be effective for that purpose unless such person be in fact in good health at the time and continue in good health for thirty days thereafter, and such payment shall be a warranty that such person is at the time in good health and that if the warranty is not true, the benefit certificate shall be null and void.'

"Sec. 131—Review Agent of Members.

" 'The review and its officers in performing the duties and administering the powers provided by these laws, shall be the agent of the members thereof, and not of the association, and no act of commission or omission on the part of the review, or of an officer or member thereof, shall create, or be construed as creating, any liability on the part of the Association, or any waiver of its rights. No subordinate body, nor any of its officers or members shall have power or authority to waive any provisions of these laws nor of the articles of incorporation, and there shall be no waiver excepting as the laws and articles of corporation shall specifically permit.'

"Sec. 132—Association Not Liable for the illegal acts or Omissions.

" 'The Association shall not be liable for the illegal receipts of arrears in rates or other moneys from suspended members or from members prescribed by the laws of the association. The receiving of any such moneys and receipting therefor, by any officer or officers of a local review, or of the association, or the

re-instatement of a member, except as provided in these laws, shall not be binding on the Association. Nor shall the Association be liable for failure on the part of the review, or any officer thereof, to serve any notice required by these laws.' "

The court's conclusions of law are as follows:

"2 That the Mesilla Valley Review No. 4, in receiving and retaining the dues, fees and assessments for the months of April, May and June, 1929, from the plaintiff, acted as agent for the Supreme Review, and therefore waived any question as to the state of health of the deceased.

"3 That the defendant is a Fraternal Benefit Association, organized as a corporation under the laws of the State of Michigan, and doing business within the State of New Mexico through local lodges called 'Reviews;' that the local reviews elect their officers, namely, president and financial secretary. The financial secretary is authorized to receive dues, fees and assessments, and to forward same to the Supreme Review monthly, and in doing so, acts as agent for the Supreme Lodge or Review.

"4 That the by-laws, rules and constitution of the Woman's Benefit Association, seek to change the fundamental principles of agency. Inasmuch as the Supreme Review authorizes local financial secretaries to receive dues, fees and assessments from its members, and forward same to headquarters, monthly, said Supreme Review is estopped from denying liability, for the reason that said local reviews are the agents of the main organization."

The court filed a written opinion in which is stated the view that the acts of the officers of the local review by reserving and forwarding to the parent association the dues on behalf of the delinquent member waived the forfeiture which had resulted from such delinquency; that the local lodge or review had acted as agent of the parent association. The court further said: "I think it is generally held that in such cases the local lodge does act as such agent in the absence of provisions to the contrary as may be contained in the policy of insurance, or in the charter or in the statute which is a part of the charter of such an association as a corporation, it being taken that the provisions of a charter and of the statute as a part of the charter all go into and are part of the insurance contract. But in cases where there are such contrary provisions in a charter, statute, or even in the policy perhaps, the Courts of the different states are divided. One line of authority holds in this respect that at all times the local acts as an agent of the parent organization, and that any such provisions either in the charter or in a statute, etc. are invalid. Other authorities hold that any such contrary provisions are valid and binding on the insurer. This question is one of first impression apparently in New Mexico. In instant case the charter, laws of the Defendant corporation, or rather by-laws, etc., and even the law of Michigan under which this corporation acts I think all contain provisions contrary to the impressing of the par-

ent corporation as a principal and as the local as an agent, in so far as any waivers are attempted by the local without the express consent of the parent. In deciding this case this Court has felt best to follow those authorities which hold that any such contrary provisions are invalid and void, and that notwithstanding provisions attempting to hold that a local in matter of waiver is not an agent of the parent, it is never the less to be held as such agent and that its acts are binding on the parent."

The trial court was of the opinion that the Supreme Court of Michigan has generally upheld the provisions of the by-laws declaring that the officers of the local review are not the agents of the parent association in transactions with the members, but held that such decisions of the Michigan court have at most persuasive force.

One of the grounds appellant urges for reversal of the judgment is that as the contract 'in question is a Michigan contract, this court should in construing said contract, under the full faith and credit clause of the Constitution, be bound to construe the same according to the charter of the association and the laws and decisions of the courts of the state of Michigan. We find it unnecessary to decide this interesting question. We regard the decisions of the Michigan Supreme Court as strongly persuasive.

As the learned trial judge said, there is a conflict of authority as to whether a provision in the laws of the association declaring that a local body and its officers shall be the agents of the members and not of the Supreme body is binding on a member and his beneficiary. See 45 C. J., Mutual Benefit Insurance, § 116.

This court has, in Nikolich v. Slovenska Nardona Podporna Jednota, 33 N. M. 64, 260 P. 849, said: "A local organization through which a benefit society transacts all business with its members is to be considered generally as its agent." However, the question as to whether stipulations to the contrary would be upheld was not there decided, and we do not find it necessary to now decide that question.

In the C. J., text cited supra, we find the case Hartman v. National Council, 76 Or. 153, 147 P. 931, 933, L. R. A. 1915E, 152, cited in a group of cases upholding stipulations making the local body and its officers agents of the member and not of the Supreme body. The opinion of the court in that case is very interesting both for its reasoning and because of the manner in which it is classified by the text-writers. On the agency question the court said that it was competent for parties to enter into a contract providing that the local officers shall be considered as agents of the members in accepting and transmitting payments for insurance and that: "There is nothing contrary to public policy or in violation of any public law in making such a stipulation. There is good reason for making the officer of the local council the agent of the member, for that official is elected by the vote of the members, and, being so chosen, it is competent for the parties to stipulate against a possible favoritism to be shown by the of-

ficer to the person who elects him as against the general membership of the order." We find that the decision, however, does not rest upon that statement alone. The court went on to say: "It is also sound policy to hold a member to strict compliance with the laws of the order respecting the payment of dues and the regulation requiring the applicant for·reinstatement to be at the time in good health. The insurance in these fraternal institutions is temporary in its character, and its stability depends upon exact observance of the rules for payment. The contract is not purely between the individual member and the corporate organization. It is in spirit and in truth a covenant, not only with the central body, but with every other individual participating in the benefits afforded by the project for the concern is mutual, and the co-operation of every member is essential to its success as an insurance society. The assured cannot take chances and make default during good health, and afterwards, when death threatens, come forward with the arrearages and claim the insurance. None the less, under such circumstances, can the beneficiary at the eleventh hour take up a project which the assured has abandoned and expect to profit thereby." The court then approaches the matter from a different viewpoint and says: "It is elementary that, if one dealing with an agent has knowledge of limitations on his authority, the representations or acts of the latter contrary to his instructions will not be binding upon the principal, unless with knowledge of all the facts the principal either waives the disobedience of the agent **or**

adopts his acts. In the exhaustive opinion of Mr. Justice Shiras of the United States Supreme Court in Northern Assurance Co. v. Grand View Building Association, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213, the subject of agency for an insurance company was carefully considered." The reasoning of Mr. Justice Shiras in the case cited is very persuasive, and is also strongly relied upon by Judge Sanborn in M. W. of A. v. Tevis (C. C. A.) 117 F. 369.

In the case at bar there is no evidence to show that the local officer, who accepted the arrearages, or any one, ever communicated to the principal officers of the defendant anything concerning the ill health of the assured. On the contrary, the stipulation negatives knowledge of the parent association of the state of health of the member at the time the dues were remitted to the local financial secretary in April, May, and June, 1929. Considering similar facts, the Oregon court further referring to the local agent, said: "Moreover, controlled as she was by the terms of her certificate and the laws of the order, which are made a part thereof, and to which she was subject, having had her part in the enactment of the same through her representatives, the assured was bound to take notice of the limitations upon the authority of the local officer, although for some purposes he might be held to be the agent of the defendant." It is interesting and important to note that the Hartman Case was explained in Somo v. Supreme Court I. O. F., 83 Or. 654, 164 P. 187, 189, where it being urged that the decision as to whose agent the lo-

cal officer was, was affected by the statute quoted and which is identical with our section 71-320, the court said: "We have examined the statute with care, and are unable to find any provision therein relating to the subject of agency, nor do we discover in the opinion of Mr. Justice Burnett, in the Hartman Case, that his conclusion was influenced by any statutory provision." As we read it, Mr. Justice Burnett cited the statute merely to show that it was competent for the defendant to forbid the local officer to waive the conditions of the contract.

So, while we find the Hartman Case, so far as it adverts to the subject of the power to stipulate that the local body and its officers shall be the agents of the members and not of the Supreme body is classified in C. J., supra, as a minority holding, whereas when it comes to discussing the power to put restrictions upon the authority of the agent, as where the society, in its constitution or by-laws, or in its contract of insurance, prohibits a subordinate body or officer thereof from waiving provisions of the contract or laws, such prohibition is binding on the member and his beneficiary, we find the Hartman Case cited as in accord with the holdings of other jurisdictions, generally. See 45 C. J. p. 146, note 95, and further in the same section of the text we find: "This rule has frequently been applied in cases where such limitation on the power of waiver is also contained in, or expressly authorized by statute." And here, again, we find the text supported by decisions from many jurisdictions without conflict, including the Hartman Case.

The distinction here sought to be emphasized was well brought out in Modern Woodmen of America v. Tevis, 117 F. 369, 374 (8th Cir.). Judge Sanborn points out that on the former hearing of the same case that court reached the conclusion that the clerk of the local body in the collection, receipt, and remittance of the benefit assessments was the agent of the head camp and not the agent of the local camp only. That position was not assailed on the rehearing. But it was contended that the terms of the contract with the beneficiaries of the insurance evidenced by the by-laws of the order so limited the power of the agent that he could neither extend the time of payment of an assessment, waive a default in its payment, nor reinstate a member without a warranty of good health; that the beneficiaries knew these limitations because they were a part of the agreement of insurance which they accepted; that no act of this agent beyond the limits of his authority prescribed by the by-laws either bound his principal or charged it with notice of his unauthorized acts. With respect to this contention, Judge Sanborn said that still assuming that the clerk of the local camp was the agent of the head camp to collect, receive, and to remit the benefit assessments to it, nevertheless "he was its agent to collect, receive, and remit them at the time and in the manner prescribed for their payment by the by-laws, and at no other times and under no other conditions."

These circumstances lead us to conclude that the trial court put undue stress upon the holdings that the provisions of the laws

of the order attempting to constitute the local body and officers the agents of the members are invalid, where their actual power and authority must be determined otherwise upon the facts, and not enough upon the proposition that said laws may restrict the scope of authority of such agents, and that if one dealing with an agent has knowledge of limitations upon his authority, the limitations or acts of the latter contrary to his instructions will not be binding upon the principal unless with knowledge of all the facts the principal either waives the disobedience of the agent or adopts his acts. We think, taking the view most favorable to the plaintiff, it cannot be said the local financial secretary was, to use the language of Marshall v. Grand Lodge, 133 Cal. 686, 692, 66 P. 25, 27, "anything more than a special agent of defendant, with defined powers, which were known to the members." Even considered as agent of the defendant, the local financial secretary could not exceed his authority.

Here we have a by-law limiting the power and authority of the local officer even if considered as agent of the parent association so as to forbid the waiver of the forfeiture resulting from the nonpayment of dues. This provision is not obnoxious to the public policy of this state as seen by the New Mexico statute quoted. The certificate which the member held contains the following provision: "The application for membership and medical examination signed by said member and this benefit certificate, the articles of incorporation and the laws, rules and regulations of this Association and all amendments, modifications and additions to each thereof shall constitute the agreement between this association and said member." The receipts introduced in evidence as showing receipt by the local officer has printed on the reverse side thereof the following: "A suspended member by paying to reinstate within the two months' period thereby warrants that she is in good health, and will so remain for a period of thirty days. If warranty is not true the benefit certificate will be null and void. See section 367 of the laws of the Association."

The only conclusions to be drawn from the record in this case is that at the time the arrearages were paid the assured was not eligible for reinstatement; that the payments made for her amounted under the laws of the order to a warranty that she was then in good health; that, although the local official knew that this was not true, yet there is nothing to show that the controlling officers of the defendant parent association knew anything about the state of her health; and that seasonably upon the same being brought to their attention they repudiated her claim and offered to return to her beneficiaries the amount paid for her. The deduction which the law makes in such a case is favorable to the defendant, and the judgment should have been accordingly.

The judgment of the district court is reversed, and the cause remanded with directions to enter judgment for the defendant.

WATSON, PARKER, SADLER, and HUDSPETH, JJ., concur.