31 P.(2d) 252

## PEOPLE'S MERCANTILE CO. v. FARMERS' COTTON FINANCE CORPORATION.

No. 3836.

Supreme Court of New Mexico.

March 26, 1934.

W. C. Whatley, of Las Cruces, for appellant.

Caswell S. Neal, of Carlsbad, for appellee.

HUDSPETH, Justice.

Appellee brought suit to recover from appellant $2,500 alleged to be due appellee in commissions for the procurement of certain cotton contracts for appellant. From a judgment for appellee in the sum of $2,375, appellant appeals.

The original complaint filed in the action alleged:

238

That the defendant was engaged in the business of financing cotton farmers in the Pecos Valley and in contracting, purchasing, selling, and otherwise dealing in cotton. That the plaintiff was engaged in the general business of furnishing goods and merchandise to farmers, particularly on the Harroun farm in Eddy county, from stores it maintained in Carlsbad, Loving, and Otis. That the defendant, through one Arlie Hardwick, its duly authorized agent, who was in general charge of its business in the Pecos Valley, "on or about the 11th day of February, 1930, for and in consideration of the sum of One ($1.00) Dollar and for further consideration of certain contracts on cotton, turned over by plaintiff to defendant, agreed to pay said plaintiff fifty points per bale of cotton on the first one thousand bales of cotton delivered to defendant by tenants on the Harroun Farm, and from the customers of said plaintiff at Otis and Loving, that a copy of said contract is hereto attached, marked Exhibit A and made a part hereof.

"That pursuant to entering into said contract, plaintiff herein delivered and caused to be delivered and there was delivered to defendant one thousand bales of cotton from the Harroun project and from plaintiff's customers in Loving and Otis who made contracts with the defendant herein, by reason whereof defendant is indebted to plaintiff in the sum of Two Dollars and fifty cents ($2.50) per bale of cotton for said thousand bales of cotton or in the sum of Twenty five hundred ($2,500.00) Dollars."

To conform to the proof, the plaintiff was permitted at trial to amend its complaint so as to allege instead of the foregoing:

"That in the early part of January, 1930, an oral contract was entered into by the plaintiff, People's Mercantile Company, and defendant, Farmers' Cotton Finance Corporation, under the terms of which, for and in consideration of the People's Mercantile Company assisting the Farmers' Cotton Finance Corporation in securing contracts on cotton in the year 1930 from customers of the People's Mercantile Company on the Harroun Project and from its Loving and Otis stores and in consideration of the People's Mercantile Company assisting the defendant corporation in securing the said contracts and in turning over said business of financing cotton farmers to the defendant herein in the year 1930, the defendant corporation through its agent aforesaid, Arlie Hardwicke agreed to pay to the People's Mercantile Company $2.50 per bale of cotton on the first 1,000 bales of cotton delivered in the year 1930 by customers of the People's Mercantile Company, who, in the year 1930, made contracts for cotton with the Farmers' Cotton Finance Corporation and that pursuant to such agreement, the Farmers' Cotton Finance Corporation in said year 1930 took cotton contracts from said customers of People's Mercantile Company and received said cotton from said customers on said contracts in excess of 1,000 bales. That on February 11, 1930, a Memoranda in writing as to the manner of payment of said contract was executed by

the defendant herein through its agent aforesaid, Arlie Hardwicke, and delivered to the plaintiff herein, a copy of which said Memoranda is hereto attached, marked Exhibit A and made a part hereof, and that under the terms of said Memoranda the Farmers' Cotton Finance Corporation agreed to pay to the People's Mercantile Company 50 points per bale of cotton on the first 1,000 bales delivered from customers of the plaintiff and at its Harroun Farm store and at its Otis and Loving stores and that the language 50 points per bale of cotton means in ordinary cotton parlance 50 points per pound of cotton and was so intended by the parties to mean, and that 50 points per pound of cotton is $2.50 per bale based upon the average bale of 500 pounds, and that under the terms and provisions of said oral contract the plaintiff was to receive from the defendant $2.50 per bale of cotton for the first 1000 bales delivered based upon a 500 pound bale and that such arrangement should apply to all cotton contracts entered into with customers of the plaintiff on the Harroun Project and its Otis and Loving stores with whom the Farmers' Cotton Finance Corporation made contract during the 1930 season.

"In reliance upon said contracts aforesaid, the plaintiff herein proceeded to perform and did perform its part of said contract in all particulars and that there was delivered to the defendant herein from customers of the plaintiff herein on the Harroun Project and from its Otis and Loving stores in excess of 1,000 bales of cotton from such customers who had made contracts with the defendant, by reason whereof defendant is indebted to plaintiff in the sum of $2,500.00."

The first point relied upon by appellant for reversal of the judgment appealed from is directed to the alleged error of the trial court in permitting the foregoing trial amendment to be made to the complaint. The contention is that the plaintiff, having declared in its original complaint upon a written contract, the amendment under which plaintiff alleged that the agreement sued upon was partly oral and partly written was not an amendment in fact, but a substitution of a new and distinct cause of action.

█ The power of the court to permit amendments of pleadings, in furtherance of justice, and to make the pleadings conform to the facts proved, is limited to those amendments which do not "change substantially the claim or defense." Comp. St. 1929, § 105-605. And the term "claim," as used in the statute, has been construed to be substantially synonymous with the term "cause of action." See Loretto Literary & Benevolent Society v. Garcia, 18 N. M. 318, 136 P. 858. The rule presents difficulty in application because of the chameleonlike nature of the term "cause of action." Cf. Harris v. Singh, 38 N. M. 47, 28 P.(2d) 1, at page 2. The limitation was suggested in Bremen Mining & Mill. Co. v. Bremen, 13 N. M. 111, at page 130, 79 P. 806, 813, to be that "an entirely new and different cause of action, founded upon facts wholly foreign to the transaction attempted to be set up in the original complaint, cannot be set up by amendment." In Loretto Literary & Be-

nevolent Society v. Garcia, supra, at page 325 of 18 N. M., 136 P. 858, Mr. Justice Roberts set out various tests which have been employed by various courts in their efforts to determine whether a given amendment introduced a new cause of action within the meaning of the rule. These tests, however, are probably not necessarily conclusive. See Bancroft, Code Pleading, § 526.

■ Appellant cites a number of cases from this jurisdiction, and from Missouri, from which state our Code provision was taken, holding certain amendments to be improper. However, an examination of these cases discloses that they are distinguishable in important respects from the case at bar. In the case at bar, the gist of the actions pleaded in the original and in the amended complaints was the same, i. e., to recover commissions for the procurement of the same cotton contracts. A recovery on the claim set out in the amended complaint would have been a bar to a recovery upon that set out in the original complaint. The same measure of damages is applicable to the claim set out in the amended complaint as to that set out in the original complaint. The original complaint was based upon a written contract that showed upon its face that extrinsic evidence in explanation thereof would be required at the trial. The amendment does little more than supply those explanatory facts. That, in so doing, it changes the form of statement of plaintiff's claim, is insufficient to bring it within the rule contended for. See Stephenson & Co. v. Bradbury, 198 Ky. 416, 248 S. W. 1055; Powell v. Rockwell, 97 Vt. 528, 124 A. 567; Rodgers v. Larrimore & Perkins, 188 Ky.

468, 222 S. W. 512; Bancroft, op. cit. supra, § 527. Appellant's first contention will therefore be overruled.

Appellant's remaining points center about the contention that appellant was not bound by its agent Hardwicke's agreement to pay appellee a commission on the cotton contracts secured through appellee.

■ At the time the arrangements which gave rise to this litigation were made by Hardwicke, who was in charge of appellant's branch office at Roswell, and who admittedly had authority to contract for the purchase of cotton and the financing by appellant of cotton crops in the Pecos Valley, it was known to the officers of the appellant company that appellee held certain liens upon the property of the farmers on the Harroun farm, that contracts for the purchase, below market price, of the cotton of those farmers could not be procured except through appellee, and that first mortgage security for any advances which appellant should make to such farmers could not be obtained unless appellee subrogated its prior liens to those of appellant. Hardwicke was intrusted by appellant with the duty of negotiating and contracting with appellee for its necessary assistance in obtaining the business of the farmers on the Harroun farm, including the subrogation of appellee's security. A consideration of some kind must have been contemplated and included in the negotiating power. The payment of a commission is admittedly not an unusual form of consideration in the cotton business for the procurement of cotton contracts. There is ample evidence to sustain the trial

court's conclusion that the agreement to pay such was within the scope of the apparent authority conferred upon Hardwicke. Undisclosed limitations upon this apparent authority were not binding upon appellee.

A principal is liable for the unauthorized acts of the agent when the conduct of the principal is such as to justify the party dealing with the agent in believing that such agent was acting within the authority conferred upon him and not in excess of it. Smith v. Insurance Co., 26 N. M. 408, 193 P. 67. See, also, Enderstein v. A., T. & S. F. R. Co., 21 N. M. 548, 157 P. 670.

The trial court found that, in the course of negotiations, Hardwicke told appellee's representative that it would be necessary for him to confer with Mr. Davis, general manager of the defendant company, before he could make such an agreement as that contemplated, and requested time to have such a conference; that thereafter Hardwicke reported that he had conferred with Mr. Davis and that he had secured the acquiescence of the defendant to the agreement. We are not inclined to disagree with the view taken by the trial judge that these facts gave rise to no duty of further inquiry on the part of the plaintiff. The statement of Hardwicke that he could not agree to the commission feature of the agreement without consulting his principal, followed by his later assertion that such authority had been conferred, might well have been interpreted as a device to "stall," quite common in bargaining processes. Defendant, having conferred ostensible authority upon his agent and placed him in a position to mislead the plaintiff as to his authority, cannot thus escape responsibility for plaintiff's having been misled. See Restatement, Agency, § 170.

Our conclusions as to the foregoing points render immaterial other assigned errors. The judgment of the district court will therefore be affirmed. It is so ordered.

WATSON, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.