### UNION LIFE INS. CO. v. BURK.

No. 3576.

Circuit Court of Appeals.
Tenth Circuit.
July 17, 1948.

Pearce Rodey, of Albuquerque, N. M. (Rodey, Dickason & Sloan, Frank M. Mims, and Jackson G. Akin, all of Alburquerque, N. M., on the brief), for appellant.

Otto Smith, of Clovis, N. M. (Fred E. Dennis and Lynell G. Skarda, both of Clovis, N. M., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

The Union Life Insurance Company, herein called the Company, has appealed from a judgment holding it liable to the beneficiary for the benefits of ten separate policies of insurance on the life of Donald G. Burk, herein called the insured, in the total sum of $10,000.

On August 14, 1943, the Union Life Insurance Company issued ten separate policies of insurance on the life of Donald G. Burk in the total sum of $10,000, in each instance naming the appellee, Dorothy V. Burk, as beneficiary. The insured was killed while piloting a privately owned plane and while not a fare-paying passenger on a commercial airline flying on a regularly scheduled route between definitely established airports. The policies contained a provision entitled "Modifications"[1] to the effect that no person except the president, vice president, secretary or assistant secretary of the company had power on behalf of the company to change, modify or waive the provisions of the insured's contract, and that the evidence of anyone claiming such power other than the designated persons must be in writing. It also contained a provision entitled "Limitations Due to War and Aviation Hazards",[2] which excluded from the cover-

---

[1] "Modifications—No person except the President, a Vice-President, the Secretary or an Assistant Secretary of the Company has power on behalf of the Company to bind the Company by making any promises respecting benefits or accepting any representations or information not contained in the written application for this Policy or to change, modify or waive the provisions of this contract or to extend the time for payment of a premium or to waive any lapse or forfeiture or any of the Company's rights or requirements, and evidence of any such action on the part of such named officers must be in writing."

[2] "Limitations Due to War and Aviation Hazards. The liability of the Company under this Policy shall be limited to the amount specified below if the Insured dies:

"(a) From any cause during the period of his military or naval service for any country at war while outside the states of the United States, the District of Columbia and Canada, or within six months after termination of such service if death be caused from any wounds, injuries, or diseases received or suffered while in service; or

"(b) Within two years after the date of issue of this Policy, as a result of an act of war occurring outside the states of the United States, the District of

age of the policies death resulting from an act of war outside the United States and death resulting from service, travel or flight in any kind of aircraft, or while descending therefrom, except as a fare-paying passenger on a commercial airline flying on a regularly scheduled route between definitely established airports.

On or about October 1, 1945, the company sent to all of its policyholders a notice[3] informing them that the war clause in the outstanding policies, with the exception of that portion thereof relating to aviation risks, was removed and would be interpreted as being automatically cancelled as of October 1, 1945. At about the same time, the company also sent to each of its agents a notice,[4] stating that on all policies issued on or after October 1, 1945, the limitation due to war and aviation hazards would be removed and that individual attention would be given to applications where possible aviation hazard was present. This letter also contained the statement that the war clause in outstanding policies would be automatically re-

Columbia and Canada, although the Insured is not in military or naval service; or

"(c) As a result of operating or riding in any kind of aircraft, or of descending therefrom, except as a fare-paying passenger on a commercial airline flying on a regularly scheduled route between definitely established airports.

"In event the Insured's death should occur under any of the conditions defined above, the Company's only liability under this Policy shall be a single sum equal to the greater of (1) the premiums paid on this Policy, decreased by any indebtedness on or secured by this Policy, or (2) the the reserve under this Policy, decreased by any indebtedness on or secured by this Policy."

3 "War Clause Removed!

"To give you the fullest protection and service your Company has removed the War Clause. This applies to all policies with the following exceptions:

"The War Clause in the present policies outstanding, with the exception of that portion of the War Clause pertaining to aviation risks will be interpreted by the Company as being automatically cancelled as of October 1, 1945; and shall not apply to any death after that date, with the following exceptions: This interpretation will not apply to the six months extension provision contained in such clause applying to those suffering from wounds, injuries or diseases, which had their inception while in service outside the home area, (or in the case of a civilian, as a result of an act of war while outside the home area) prior to October 1, 1945. This interpretation will not apply to any policyholder heretofore reported missing in action and subsequently declared presumptively dead under a Federal or any State statute declaring a presumption of death after a member of the Armed Forces has been missing in action for any fixed period of time.

"This action does not affect the limitation or exclusion contained in disability or double indemnity riders."

4 "September 29, 1946.

"Limitations Due to War and Aviation Hazards.

"Ordinary Department.

"1. On all life policies issued on or after October 1, 1945, the provision entitled 'Limitations Due to War and Aviation Hazards' will be eliminated. In all cases where the possibility of aviation hazard exists, each case will receive individual attention and where necessary, an extra rate or restrictive provisions will be included in the policy. Generally, this will be only imposed where the applicant is a pilot or member of the crew of a plane, or where he is a student pilot, although occasionally other causes might be included.

"2. The War Clause in the present policies outstanding, with the exception of that portion of the war clause pertaining to aviation risks will be interpreted by the Company as being automatically cancelled as of October 1, 1945; and shall not apply to any death after that date, with the following exceptions: This interpretation will not apply to the six months extension provision contained in such clause applying to those suffering from wounds, injuries or diseases, which had their inception while in service outside the home area, (or in the case of a civilian, as a result of an act of war while outside the home area) prior to October 1, 1945. This interpretation will not apply to any policy holder heretofore reported missing in action and subsequently declared presumptively dead under a Federal or any State statute declaring a presumption of death after a member of the Armed Forces has been missing in action for any fixed period of time.

"3. This action does not effect the limitation or exclusion contained in disability or double indemnity riders.

"Chas. A. Miller, Vice President."

238

moved as of October 1, 1945, with the exception of that part thereof relating to aviation risks.

E. L. Holley was the manager and special representative of the company at Clovis, New Mexico. Both his manager and special representative contract contained substantially the same provisions providing that:

"Nothing contained herein shall be construed to create the relation of employer and employee between the Company and the Agent, and the Agent shall be free to exercise his own judgment as to the persons from whom he will solicit insurance and the time and place of solicitation. The Company may, however, from time to time prescribe rules and regulations respecting the conduct of the business covered hereby, not interfering with such freedom of action of the Agent, which rules and regulations shall be observed and conformed to by the Agent."

The special representative contract contained the provision that:

"The Agent shall have no power or authority other than as herein expressly granted."

F. O. Burk, the father of the insured, the insured, and Holley all were engaged in private aviation as pilots. They were acquainted with each other and all three flew from the Clovis Air Field. Holley did not write these contracts of insurance. F. O. Burk testified that during the latter part of October, 1945, he had a conversation with Holley at the Clovis Airport concerning the elimination of the aviation clause from his own policies as well as from the policies of the insured, both in the company as well as in other insurance companies; that about a week later he took all of his own policies, as well as the insured's policies, to Holley's office for the purpose of having the aviation clause removed. He testified that they examined the policies and that Holley advised him as to which ones it would be necessary for him to send in to the respective companies to have the aviation clause removed; that Holley advised him

that the aviation clause had been removed from the policies in question; that Holley informed him that no additional premium would be required on the insured's policies in the company because of his aviation activities. He also testified that he received a copy of the letter sent to all policyholders and that he did not think that it removed the aviation clause from the policies but that he only read a portion of the letter. He further testified that from his conversation with Holley he was led to believe that the aviation clause had been removed from the policies in question and that he relied on Holley's statements. After this conversation with Holley he took all of the policies in question in this litigation home with him and took no further action with respect thereto.

Holley testified in substance that Burk came to his office with these policies, as well as with other policies, and that he showed Burk a policy that was issued by the company after October 1, 1945, which contained a rubber stamp impression cancelling paragraph nine, and informed Burk that the aviation clause in these policies had been cancelled; that Burk informed him that if the aviation clause was not eliminated the policies were to be sent in to procure a cancellation of the aviation hazard clause. He further testified that he informed Burk that no additional premium was due by virtue of the elimination of the aviation hazard clause. Holley did not intend to state that this clause in these policies had been removed by specific action nor did Burk so understand him. Both understood that what Holley meant to convey was that the notice to the policyholders and the letter of instruction to the agents automatically effected a cancellation of these clauses in the old policies.

 The contracts in question are New Mexico contracts and are controlled by the laws and decisions of that State.[5] By the laws of New Mexico, a provision in an insurance policy providing that no person except designated individuals shall have power to waive contractual provisions

[5] Ruhlin v. New York Life Insurance Company, 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290.

is binding and renders ineffective any action on the part of others purporting to waive or to modify policy provisions.[6]

The trial court correctly found that the notice to the policyholders and the letter to the agents did not automatically eliminate the aviation clause from the policies in question; that Holley was not authorized by the company to waive these provisions of the policy and that he did not purport to have such authority. In its conclusion of law, the court held that Holley was authorized to accept the policies of insurance for the purpose of effecting the elimination of the restrictive clauses, that in so doing he acted as the agent of the company and that the facts presented a plain case of neglect of duty on his part acting within the scope of his authority. From this, the court concluded that the company was estopped from denying the misrepresentations of its agent Holley, and was, therefore, estopped to rely upon the exclusion clause in the policy which otherwise would bar recovery.

██ The negligent representations of Holley in the interpretation of the policy, if they can be construed as being negligent, would not bind the company unless they were made within the scope of his authority, or, if not warranted by the scope of his authority, they nevertheless came to the notice of the company, and by its subsequent conduct it estopped itself to repudiate them. Interpreting contracts of insurance is not within the scope of authority of a soliciting agent or of a special agent such as Holley was.[7] Furthermore, the plain provisions of the policies as to who had power to modify or change them negatives any such authority in Holley.

██ Not being empowered to interpret the policies, the conclusion is inescapable that the company was not estopped to repudiate Holley's interpretation of these contracts and rely on the express contractual provisions. Appellees do not claim that the interpretation which Holley placed on these contracts ever came to the attention of any official of the com-

pany having power to change the policies or possessing power to bind the company thereby by its failure to repudiate them, nor would the record sustain such a claim.

It may be assumed for the purpose of this opinion that Holley had authority to accept these policies for the purpose of sending them to those having the power to eliminate the clauses in question and that his negligent failure to send them in would make the company liable, although there are difficulties with this theory. There is no assurance if they had been sent in that the clauses in 'question would have been eliminated since that rested in the discretion of the proper company officials. The difficulty with the theory is that the policies were brought to Holley primarily for the purpose of interpreting them and with the intent then to send such of them in for modification which, under the interpretation, needed to be modified to eliminate these clauses. Burk brought all of his policies, as well as all of the insured's policies, in this company, as well as in others, for this same purpose; namely, to have them first passed upon and then to attempt to secure an eliminaiton of these clauses in such as required it. The first and primary thing was to secure an interpretation by Holley of these contracts of insurance. Holley rendered his opinion that these policies were not subject to these provisions. If, as we have held, the Company was not bound by this interpretation, it cannot be estopped by Burk's reliance thereon resulting in his failure to take any further steps to have the policies sent to the Company in an effort to obtain an elimination of these provisions.

Appellees cite a number of New Mexico decisions on which they rely to sustain the judgment. In the interest of brevity, no analysis of these cases will be attempted. We have carefully considered all of them and are of the opinion that they are not controlling here. To illustrate, in Dearborn v. Niagara Fire Insurance Company, 17 N.M. 223, 125 P. 606, an owner had let a contract for the construction of a build-

---

[6] Smith v. New York Life Insurance Co., 26 N.M. 408, 193 P. 67; Bloodgood v. Woman's Benefit Association, 36 N.M. 228, 13 P.2d 412; Warren v. New York Life Insurance Co., 40 N.M. 253, 58 P.2d 1175.

[7] See Anderson v. Aetna Life Insurance Co., 303 Ky. 322, 197 S.W.2d 781.

ing. He wanted the property and his interest therein covered by a fire insurance policy. The policy was issued in the name of the contractor. Both the agent who wrote the policy and the owner intended to insure his interest and thought that a policy issued in the name of the contractor would insure him. Under these facts, the court reformed the policy to conform to the contract which they thought they had written. All of the other cases have factual situations distinguishing them from this case.

Reversed and remanded.